INMAN & COMPANY, for use, *v.* THE ELBERTON AIR-LINE
RAILROAD COMPANY.

90   663
98   374

1. The evidence warranted the verdict.
2. It being alleged that the burning of the plaintiffs' property was caused by sparks which escaped from one of two engines described in the declaration, by reason of the defective condition of the engine and the negligent manner in which it was operated, the refusal of the court to admit evidence that other engines of the defendant, besides these two and not shown to be of like construction, had at other times emitted sparks at or near the same place, is not ground for a new trial.
3. The controlling issue in the case being whether or not the fire complained of originated from sparks emitted by a locomotive of the defendant, and the evidence showing clearly that it did not so originate, and consequently that the defendant was not liable, charges based on the hypothesis of negligence on the part of the plaintiff, either contributing to or causing the injury, though not authorized by the evidence, will not require the reversal of a judgment denying the plaintiff a new trial.   The issue being as stated, the erroneous charges probably did not influence the jury; or if they did, they did not mislead as to the result, and the verdict being manifestly right, it should not be set aside.

January 4, 1893.

Negligence.   Evidence.   Charge.   Before   Judge
McWHORTER.   Hart superior court.   March term, 1892.

R. J. JORDAN and W. L. HODGES, for plaintiffs.

E. WOMACK and A. G. McCURRY, for defendant.

SIMMONS, Justice.

1. The action was against the railroad company for the value of certain cotton alleged to have been burned upon a platform a few feet from the defendant's track, by sparks which escaped from one of two locomotives described in the declaration, on account of the defective condition of the engine and the negligent manner in which it was operated.   The verdict was in favor of the railroad company, and the plaintiffs made a motion for a new trial, which was overruled, and they excepted.

The evidence as to the cause of the fire was wholly circumstantial.   It was shown that a few minutes before

the fire was discovered, two locomotives of the defendant passed the platform on which the cotton was situated; and a witness testified that he saw the smoke of one of them fall back over some of the cotton. This was the only evidence tending to connect the defendant with the burning. On the other hand, it was shown that a strong wind was blowing past the platform towards the engines and carrying the smoke away from, instead of in the direction of the cotton; also that the smoke from a stationary engine at a cotton-gin on the other side of the platform had been blowing in the direction of the cotton about twenty-five or thirty minutes before the fire was discovered and for some time before that. The cotton was on the south side of the platform; the railroad track was at the east side, twenty-five or thirty feet from it, and ran north and south. The cotton-gin engine was southwest of it, a distance of about 200 feet, and the arm of the smoke-stack pointed northward. Numerous witnesses testified as to the direction of the wind, and all of them agreed that it came from the southwest, and according to some of them it was blowing " fiercely," and the smoke could not have been carried from the locomotives back to the cotton on the platform. One of the witnesses stated that he came to town on the day of the fire about ten o'clock in the forenoon, and got out of his buggy at the southwest end of the platform, where the cotton was situated, and that the wind was blowing the smoke from the cotton-gin engine in his face and towards the cotton that was burned; that cinders and ashes were falling on his clothes and all around him. He remained in town about an hour and a half, and when he left, the smoke and cinders were still blowing from the gin engine. The fire was discovered about half-past two that afternoon. Other witnesses testified that sparks from the gin engine had fallen on them as far as **175**

and 250 feet from the engine, and on one occasion had set fire to trash near where the cotton was burned. No one testified as to having seen any sparks or cinders escape from the defendant's locomotives on the day of the burning.

The burden was upon the plaintiffs to establish by a preponderance of evidence that the fire was communicated from one of these locomotives. They showed at most a possibility that it came from that source. On the other hand this was shown to be exceedingly improbable, if at all possible, while it was not only possible but altogether probable that the fire was caused by sparks from the cotton-gin engine. We think the evidence not only warranted, but demanded the verdict.

The condition or management of the locomotives, which the plaintiffs claimed to be negligent, though it may have tended to show a possibility that sparks escaped from them on this occasion, would not in any other respect count against the defendant, unless it was satisfactorily established that sparks from that source did set fire to the cotton. The plaintiffs would have no right to complain of such negligence unless it was shown that they were injured by it. But even if it had been shown that the fire was communicated from one of the locomotives, there was sufficient evidence to uphold a finding that the company exercised all reasonable care and diligence in keeping them in proper condition, as well as in properly managing and operating them at the time and place in question; and if this was so, the company would not be liable. Outside of the statement of a witness for the plaintiff, that wood-burning engines, as well as " coal-burners," needed wire-screens to prevent the escape of sparks, the only evidence as to the condition of the locomotives came from the defendant, and this evidence was to the effect that each of them had a spark-arrester of the latest improved pattern,

which was well adapted to the purpose and was the best in use for that kind of engine; and that although no wire-netting was used in them, such netting was adapted only to coal-burning engines and not to this kind, these being wood-burners; that where wood was burned, the netting would choke up and the engine would not draw. Several witnesses testified that the engines and the spark-arresters were in good condition and that nothing was out of order. A witness for the plaintiffs testified that there was a considerable exhaust from the engines as they passed the platform, and that they were running rapidly; but this was denied by each of the engineers. As we have said, however, even if it should be shown that there was negligence in the condition and running of the engines, the plaintiffs would have no right to complain of it unless they first showed that they were hurt by it; and this they have failed to do.

2. Error is assigned upon the refusal of the court to admit evidence that other engines of defendant, besides the two alleged in the declaration, had at other times emitted sparks at or near the place of the fire in question; this evidence being offered to show general carelessness or negligence on the part of the defendant. We think the court was right in declining to admit evidence of this kind. The declaration alleged that one of two particular engines caused the burning, and the engines referred to were distinctly identified. One was the "Nancy Hart" and the other the "Ellen B. Peeples." It was not claimed that the fire was caused by any other. The question before the jury was whether it was caused by one of these, and the negligence alleged was negligence in the condition and management of these two. How then could it be material or relevant to show negligence on other occasions and in regard to other engines than these, especially when there was no attempt to show that such other engines were of like construction? The

cases cited in support of the contention that this testimony should have been admitted, are clearly distinguishable from the present case. In some of them the evidence as to other occasions related to the particular engine which was alleged to have caused the fire; and in the other cases the engine that caused the fire was not identified. Where the engine that caused the fire cannot be fully identified, evidence that the defendant's engines frequently emitted sparks on former occasions near the time of the fire in question, is generally held relevant and competent to show habitual negligence, and to make it probable that the plaintiff's injury proceeded from the same quarter; but when the engine is identified, the same reason does not operate, and evidence as to the condition of other engines and of their causing fires is clearly irrelevant. To this effect see 2 Sherman & Redf. Neg. §675 (ed. 1888), and cases cited. See especially the following cases: Albert v. Railroad Co., 98 Pa. St. 316; Erie Ry. Co. v. Decker, 78 Pa. St. 293; Coale v. Railroad Co., 60 Mo. 227; Boyce v. Cheshire R. Co., 42 N. H. 97; Jacksonville, etc. R. Co. v. Peninsular, etc. Land Co., 9 Southern Rep. (Fla.) 662, 676; Ireland v. R. Co., 79 Mich. 163, 48 N. W. Rep. 426; Gibbons v. Railroad Co., 58 Wisc. 335, s. c. 13 Am. & Eng. R. Cas. 469. In the last of these, the question is considered at some length, and among the cases discussed is that of Grand Trunk R. Co. v. Richardson, 91 U. S. 454, which was the authority mainly relied upon by counsel for the plaintiff in error here. It is said: "In that case, both in the brief of the learned counsel and in the opinion of Mr. Justice Strong, the language is very carelessly used, that evidence that the locomotives of the company, at other times and places on the same road, were so constructed as to scatter fire along the track, might tend 'to prove a possibility, and a consequent probability, that some

locomotive of the company caused the fire, and show a negligent habit of the officers and agents of the railroad company.' But in that case it is said in the opinion, 'the particular engines which caused the fire were not identified.' In such a case such evidence might tend to prove the possibility and consequent probability that some locomotive of the company caused the fire. This wonderfully loose logic may be satisfactory to a judicial mind in cases where there was no proof that any particular and identified locomotive caused the fire in question, if any .locomotive of the company did. But in due deference to the learned judge who wrote the opinion, and the other judges who have used this language, it is submitted that a possibility can never establish a probability of a fact required to be proved in order to make a railroad company or any party liable in any action whatever, and the proposition is no sounder in logic than in law. It would be a monstrous doctrine that, when a party is sued in tort for a personal injury to another, occasioned by his negligence in not furnishing proper appliances, or otherwise, his common carelessness, or carelessness in other cases, tends to prove the 'possibility,' and therefore 'probability,' that the act charged was the result of his negligence, without proof even that he committed it."

In the case of *East Tenn., Va. & Ga. Ry. Co.* v. *Hesters*, decided by this court at the last term (90 *Ga.* 11), in which the testimony as to the escape of sparks from engines of the defendant on occasions previous to the fire in question was held admissible, the evidence for the company showed that all the locomotives of the company were kept substantially in the same condition. Besides, in that case there was a general allegation that the fire was caused by the defendant's engines, and no particular engines were described or identified.

3. Complaint is made that the court erred in charging

the jury upon the hypothesis of negligence on the part of the plaintiffs, because the instructions on this subject were inapplicable to the case and without evidence upon which to predicate them. If these instructions were erroneous, the error was not such as to require a reversal of the judgment. The controlling issue in the case being whether or not the fire originated from sparks emitted by one of the defendant's locomotives, and the evidence showing clearly that it did not so originate, and consequently that the defendant was not liable, the instructions complained of probably did not influence the jury, or if they did, they did not mislead as to the result; and the verdict being manifestly right, it should not be set aside.                    *Judgment affirmed.*