JOHN G. DUNNING *vs.* MAINE CENTRAL RAILROAD COMPANY.

Penobscot. Opinion December 20, 1897.

*Railroad. Fire set by Engine. Negligence. Evidence. R. S., c. 51, § 64.*

In the trial of an action for damages by fire, alleged to have been communicated by a locomotive engine, when the question at issue is whether as a matter of fact the fire was caused by any locomotive, evidence that other fires were caused by the defendant's locomotives, at about the same time and in the same vicinity, is relevant and admissible for the purpose of showing the capacity of locomotive engines to set fires by the emission of sparks or the escape of coals.

That other engines of the same company, under the same general management, passing over the same track at the same grade, at about the same time and surrounded by the same physical conditions, have scattered sparks or dropped coals so as to cause fires, appeals legitimately to the mind as showing that it was possible for the engine in question to do likewise. Such testimony is illustrative of the character of the locomotive, as such, with respect to the emission of sparks or the dropping of coals.

And this rule is applicable although, before the testimony was admitted, defendant's counsel claimed that the plaintiff had already identified the engine as one drawing a certain train, which was true; and gave notice that the engine drawing that train would be fully identified by the defendant, and although the defendant subsequently identified the engine by number.

This rule is also applicable although, before the evidence was admitted, defendant's counsel expressly admitted the possibility of an engine setting fires.

It does not lie in the power of one party to prevent the introduction of relevant evidence of the other party by admitting in general terms the fact which such evidence tends to prove, if the presiding justice in his discretion deems it proper to receive it. Parties as a general rule are entitled to prove essential facts and present to the jury a picture of the events relied upon. To substitute for such a picture a naked admission might have the effect to rob the evidence of much of its fair and legitimate weight. *Held;* that exceptions do not lie to the admission of relevant evidence under such circumstances.

The testimony of a witness that he saw fire in a pile of sleepers beside the railroad track, soon after a locomotive had passed, is admissible and should not be afterwards stricken out upon motion, although upon cross-examination he testified that he didn't know how the fire caught or how long it had been burning, though " it couldn't have been there a great while." The weight of the evidence is for the jury.

So in regard to the testimony of a witness who testified that he saw a fire soon after an engine had passed, though his statement upon cross-examination respecting the time he saw the fire was inconsistent with his testimony first given.

So in regard to the testimony of a witness who testified that he saw certain fires two or three days after the fire in question, although a witness for the defendant recollected these fires as having occurred between two and three months later. *Held;* that whatever the facts may have been, these are questions which cannot be settled upon exceptions. It is for the jury to consider, in view of all the testimony, whether the witnesses are credible and reliable. The court cannot exclude the testimony of a witness because it is inconsistent or inaccurate.

*Thatcher* v. *Maine Cent. R. R. Co.*, 85 Maine, 502, affirmed.

ON MOTION AND EXCEPTIONS BY DEFENDANT.

This was an action on the case to recover for the loss of the ice houses, and other property therein, formerly belonging to the Katahdin Ice Company, and situate in Bangor between the track of the defendant company and the Penobscot river at High Head. The case was tried to a jury in the court below, sitting in Penobscot county; and it was agreed that the case should be submitted to the jury upon the single question of the defendant's liability,

with the understanding that if there was a verdict for the plaintiff, it was to be heard by Mr. Justice WISWELL in damages.

The first count in the declaration is as follows:

In a plea of the case, for that the said plaintiff at Bangor aforesaid on the 27th day of May, 1896, owned and was possessed of certain property, to-wit, the ice-houses formerly belonging to Katahdin Ice Company, and lying and being in Bangor aforesaid, between the track of said Maine Central Railroad Company and the Penobscot River at "High Head," so-called, and the boiler-house connected therewith, all being of the value of twenty thousand dollars, and also of certain machinery, tools and appliances consisting of engine, boiler, elevator, shafting, belts, runs, rigging, and ice-tools, all being of the value of three thousand dollars, and also of a large quantity of ice stored in said houses, to-wit, twenty thousand tons of ice of great value, to-wit, of the value of twelve thousand dollars, all of which said buildings and property were then and there of the total value of thirty-five thousand dollars, and were then and there lawfully placed and stored on land of said plaintiff and adjoining the railroad of said Maine Central Railroad Company, and were then and there, and for a long time before had been, situated and deposited there, and were such property as said Maine Central Railroad Company had an insurable interest in and could have procured insurance thereon, and then and there said Maine Central Railroad Company, so chartered by the laws of said State did own and operate a railroad adjoining said premises and property of said plaintiff, and did then and there run and use by its servants and agents a locomotive engine and cars attached thereto, and on said day at said Bangor while said locomotive engine was being run and used and operated on said railroad by said corporation, said property of said plaintiff was injured and destroyed by fire communicated by said locomotive engine so being run and used by said corporation.

And said plaintiff avers that his said property above named and so situated as above was totally destroyed at said time and place by said fire, and that the sole cause of said fire and such injury and

destruction of his property was the fire communicated by the locomotive engine, so being used and run by said corporation.

The jury returned a verdict in favor of the plaintiff and the defendant filed a general motion for a new trial and also took exceptions.

From the defendant's bill of exceptions it appears that the plaintiff's counsel in his opening of the case had claimed that the fire which caused the damage, which is sued for in this case, had been communicated by the locomotive of the defendant company which drew what was known as the Dexter & Dover train that left Bangor on the afternoon of May 27th, 1896, at 4.30 P. M.

Frank William Robinson, whose deposition was introduced by the plaintiff, testified that on the afternoon of May 27th he left his house, which was near the ice house that was destroyed, about 5 P. M. local time or 4.30 standard time in the afternoon of that day, and going up the track towards the station in Bangor he met a locomotive drawing the Dover & Dexter train, and that at about the time he got up to the city he heard the alarm of fire caused by the fire in question.

William H. Quine, a witness for the plaintiff, had testified that he saw an engine drawing the Dexter & Dover train go by ten or fifteen minutes before this fire in the ice house was discovered.

Margaret S. McCormick, a witness for the plaintiff, had testified that she saw the Dexter & Dover train go by between half past four and twenty-five minutes of five, and that the fire in the ice house was discovered at five minutes after five.

Philip P. McCormick had testified that it was fifteen or twenty minutes, more or less, after the Dexter train went out that the fire in the ice house was first discovered.

It was claimed throughout the case by the plaintiff that this fire was caused by the particular locomotive which drew the Dexter & Dover train leaving Bangor on that particular day at 4.30 o'clock in the afternoon.

Plaintiff's counsel offered testimony tending to show that at various times shortly before and after the fire in the ice house, constituting the cause of action in this case, other fires were seen

on, or in the immediate vicinity of, the track, and that other engines of the defendant corporation by emitting sparks, cinders or coals, spread fire.

This testimony was not at first admitted, but after the introduction of the testimony hereinbefore stated as to the identity of the engine, which it was claimed on the part of the plaintiff set this particular fire, the presiding justice, against the objection and subject to the exception of the counsel for the defendant, ruled for the purposes of this trial, that for the purpose of showing the capacity of locomotives used by the defendant company to cause fires, and for the purpose of showing the possibility that this fire was caused as claimed by the plaintiff, he would admit testimony tending to show that, at various times about the time that this fire was caused and in that vicinity, engines of the defendant corporation by emitting sparks, cinders or coals spread fire; and that fires were seen on, or in the immediate vicinity of, the track immediately after, shortly after the passage of locomotives of defendant company.

Defendant's counsel thereupon gave notice that the engine drawing this train would be fully identified and that it appeared already that the plaintiff had identified that engine as drawing that particular train, and that he in behalf of the defendant admitted the possibility of engines setting fires; but the presiding justice admitted the testimony, saying further that he thought the evidence should be of such a character as to show that these fires were caused by locomotives of the defendant company, not merely that there were other fires at other times in the immediate vicinity of the track, but that sparks were emitted, or that coals were emitted, or shortly after the passage of other locomotives, other fires were seen upon the track or along the track.

To this ruling and the admission of such testimony defendant took exceptions.

John Lee, a witness called by the plaintiff, was asked the following question: "Have you at or about the time of this fire on the 27th day of May last, seen any fires about in the vicinity of the ice houses and contiguous to the track immediately or soon

after the passage of any locomotives of the Maine Central Railroad?"

This question objected to by counsel for the defendant, was admitted subject to his objection and exception; whereupon the witness answered:—

"Yes, sir, I have seen fires," and went on to state that he saw one that very afternoon that the fire in the ice house took place, and that it was in a pile of sleepers at the southerly end of High Head cut.

This same witness upon cross-examination testified that he did not know how this fire in the sleepers caught; he did not know how long it had been burning when he saw it, and that he did not know anything about it except that he saw it. He subsequently said that it could not have been there a great while when he saw it, as he judged from the headway it had. This witness further testified that he left the stable on that day at one o'clock local time or half-past twelve standard; that it took him about fifteen minutes to go from the stable to the ice houses; that immediately upon his arrival they went to work loading up the teams; that they loaded up four teams that afternoon and that it ordinarily took to load all the teams some two hours more or less. He said that he saw this fire in the sleepers after they commenced to load, and that he could not say whether it was while they were loading the second team or the first team when he saw it, or the third or the fourth team.

It was admitted that a train left the Maine Central station at 1.40 standard in the afternoon of that day. At the close of this witness's testimony and after said cross-examination, counsel for the defendant asked that this testimony relating to this fire in the sleepers be stricken out, whereupon the court ruled that it might stand subject to objection.

To the admission of the aforesaid testimony and the allowing it to stand defendant excepted.

Thomas E. Smullen, a witness called by the plaintiff, was asked: "Did you ever notice cinders along the track," and answered, "Yes, sir," and was further asked, "Now, within a few days or

weeks of the fire at the ice house, have you seen other fires in the vicinity of the ice house near the railroad track and shortly after the passage of the locomotive within a short time before," to which he answered, " Yes, sir," and the defendant's counsel objecting, the court said " all of this is subject to the general objection."

To the admission of this testimony defendant excepted.

Charles M. Stewart, a witness called by the plaintiff, subject to the same general objection on the part of the defendant, was allowed to testify in relation to other fires, and testified particularly as to a lot of fires, thirteen different fires, he said, found on the sleepers of that section of the railroad in one day.

To the admission of this testimony defendant excepted.

Defendant subsequently identified this particular engine drawing the Dexter & Dover train as engine No. 95, and showed that the engines in use on this particular railroad were built by different builders, of different sizes and different classes of construction, and further showed particularly in relation to the great number of fires on one day in the sleepers testified to by Charles M. Stewart, that they were caused by another locomotive, No. 162, which had defective grate bars allowing the dropping of coals on to the sleepers, the engine being a new one and not having been fully fitted for its work. Defendant further showed that the cinders which are taken from the locomotives as they accumulate are loaded on cars and distributed along the shoulders of the roadbed in this vicinity.

After all this testimony on the part of the defendant had been introduced, and at the close of the testimony in the case, defendant's counsel renewed his motion to strike out this evidence regarding other fires which had been objected to, but the court overruled the motion; to which overruling of the motion and allowing the testimony to stand the defendant excepted.

A full report of the evidence in the case and a full copy of the charge of the presiding justice to the jury as bearing upon the points of the exceptions were made a part of the bill of exceptions.

Among other instructions given by the presiding justice to the jury are the following:—

"Now, there has been certain other testimony introduced in this case, to some extent guarded evidence has been offered, as you very well remember, tending to show that other locomotives, or locomotives generally of this road, at about the time of the fire and in that vicinity, did scatter fire by the emission of sparks, or the escape of coals, or in some way that fire has escaped from other engines and set fire to other inflammable material along the line of the track. That was offered, gentlemen, and admitted for but one single purpose; . . . . it was admitted for the purpose of showing the capacity of locomotive engines to set fire by the emission of sparks or the escape of coals, to show the possibility that such things might happen from the engines that were in general use by this company, this defendant company, at this point; and it is not competent for any other purpose, and will not, I am sure, and cannot have any other bearing in your minds."

*Charles P. Stetson and John R. Mason*, for plaintiff.

*Charles F. Woodard*, for defendant.

The possibility of a locomotive causing fire was expressly admitted, and when admitted, evidence to prove what was expressly admitted could only have been desired for the purpose of exciting prejudice against the defendant and should have been excluded. *Smith* v. *Old Colony R. R. Co.*, 10 R. I. 22, 27, 28; *Ross* v. *The Boston & Worcester R. R. Co.*, 6 Allen, 87; *Gibbon* v. *Wisconsin Valley R. R. Co.*, 58 Wis. 335, (13 Amer. & Eng. R. R. Cases, 469).

When the particular engine is known and designated it is not competent to show generally that the defendant's engines have caused fires at other times and places. *Ireland* v. *Cincinnati, etc., R. Co.*, 79 Mich. 163, 165; *St. Louis, etc., R. R. Co.* v. *Jones*, 59 Ark. 105, (26 S. W. Rep. 595).

Where the injury complained of is shown to have been caused, or, in the nature of the case, could only have been caused, by sparks from a locomotive which is known and identified, the evidence should be confined to the condition of that engine, its management, and its practical operation. Evidence tending to prove

defects in other engines of the company is irrelevant, and should be excluded. *Henderson, Hull & Co.* v. *Phila. & Reading R. R. Co.*, 144 Penn. St. 461, (22 Atl. Rep. 851).

"The evidence as to what were the condition and repair of engines, other than those in use upon the defendant's road on the night of the fire, and from which, if from any, the fire must necessarily have been communicated to the plaintiff's buildings, was incompetent and inadmissible. That sparks or even coals might have been emitted at other times from other engines employed upon the road, had no legal tendency to prove that the engines employed upon this particular occasion emitted either sparks or coals. To have rendered the evidence competent, it should have been confined to the same engines, operated in the same manner and in the same state of repair, or to other engines conceded to have been of the same construction, to have been used in the same manner and in the same state of repair. . . . . It might be suggested, that, under the instructions of the court, the testimony objected to, though incompetent, was also immaterial, and therefore its improper admission furnishes no ground for setting aside the verdict; but we think it was well calculated to prejudice the minds of the jury against the defendant." *Boyce* v. *Cheshire R. R. Co.*, 42 N. H. 97, 100.

Counsel also cited:—*Hubbard* v. *Androscoggin & Kennebec Ry. Co.*, 39 Maine, 506 ; *Parker* v. *Portland Pub. Co.*, 69 Maine, 173.

SITTING: PETERS, C. J., EMERY, HASKELL, WHITEHOUSE, SAVAGE, JJ.

SAVAGE, J.   Action on the case to recover for the loss of property by fire alleged to have been communicated by a locomotive engine of the defendant corporation. The case comes up on a motion for a new trial, and on exceptions. The entire evidence and the charge of the presiding justice are made a part of the bill of exceptions. The plaintiff's claim is based solely upon the statute, R. S., c. 51, § 64, which provides that " when a building or other property is injured by fire communicated by a locomotive

engine, the corporation using it is responsible for such injury."
No question of negligence on the part of the defendant is involved.
The principal, if not the only, issue of fact submitted to the jury
was whether the fire which occasioned the loss of the plaintiff's ice
house was, in fact, communicated by one of the defendant's loco-
motives.    The plaintiff relies upon circumstantial evidence.    The
defendant claims that the circumstances proved are not sufficient
to raise a legitimate inference that the fire was communicated by
one of its engines.

The evidence introduced by the plaintiff shows, we think, that
on May 27, 1896, the Dover and Dexter train drawn by one of
the defendant's engines passed the plaintiff's ice house at 4.35
o'clock P. M.; that about fifteen or twenty minutes later fire was
discovered burning on the roof of the ice house which inclined
towards the railroad, at a point about fifty-five feet from the rail-
road track, and somewhat higher than the level of the track, but
lower than the top of the smoke stack of the engine; that when
first discovered, the fire had burned over a space about two feet
square; that when an attempt was made immediately afterwards
to beat it out with a stick, it was scattered to other parts of the
roof; that there was no appearance of fire within the building
until after the fire burned through the roof; that on that day no
ice had been taken from the building, the ice house engine had not
been run, and no fire had been made or used within the building;
that two or three workmen had been employed about the building
during the day, one of whom was the watchman; that he finished
work and left the building five or ten minutes before the passing of
the Dover and Dexter train; that when he left, there was no
appearance of fire in or about the building; that no person had
been seen upon or about the roof that day; that the season was
very dry, the roof was dry and the shingles old; that a strong
wind was blowing towards the ice house from the railroad; that in
the vicinity of the ice house, the railroad track, in the direction the
Dover and Dexter train was going, had an up grade of forty-one
feet to the mile; that locomotive cinders were seen about the track
at about the time of the fire, and that sparks were seen coming

Me.] DUNNING *v.* ME. CENT. R. R. CO.

from a locomotive, but whether it was from the locomotive in question does not appear. There is no evidence that the fire was communicated by any of the defendant's engines, unless it was by the one drawing the Dover and Dexter train.

Against the objection of the defendant, the plaintiff was permitted to introduce evidence to show that at various times about the time that this fire was caused and in that vicinity, engines of the defendant corporation, by emitting sparks, cinders or coals, spread fires, and that fires were seen on, or in the immediate vicinity of the track, shortly after the passage of defendant's engines, of such a character as to show that they were caused by such engines; and the admissibility of testimony of this class is the principal question raised by the defendant's exceptions. Before the testimony was admitted, the defendant's counsel claimed that the plaintiff had already identified the engine as the one drawing the Dover and Dexter train, and gave notice that the engine drawing that train would be fully identified by the defendant, and the defendant did subsequently introduce evidence that the engine which drew that train was No. 95. Also, before the testimony concerning other fires was admitted, the defendant's counsel expressly admitted the possibility of engines setting fires; and he now claims that because of this admission, the testimony, even if otherwise relevant and admissible to show such a possibility, should have been excluded. We do not think so.

It does not lie in the power of one party to prevent the introduction of relevant evidence by admitting in general terms the fact which such evidence tends to prove, if the presiding justice in his discretion deems it proper to receive it. Parties as a general rule are entitled to prove the essential facts, to present to the jury a picture of the events relied upon. To substitute for such a picture a naked admission might have the effect to rob the evidence of much of its fair and legitimate weight. No exception lies to the admission of relevant evidence under such circumstances.

To return to the principal question. In the case of *Thatcher* v. *Railroad Company*, 85 Maine, 502, a case similar to the one now under consideration, this court said, respecting evidence tending to

show other fires communicated by the locomotives used on the defend-
ant's railroad at different times about the same time that the plain-
tiff's lumber was destroyed by fire and in the same vicinity: "We
think its competency, where the issue is whether the fire was com-
municated from a locomotive, is clearly established by courts of the
highest authority. It tends to show the capacity of the inanimate
thing to set fires along the road, and when a fire is discovered soon
after a locomotive has passed and there is no evidence tending to
show that it might have been caused in some other way, it author-
izes the inference that it was caused by the locomotive." The
learned counsel for the defendant claims that the rule, so stated, is
subject to modification, and that it is applicable only when the
engine alleged to have caused the loss is not identified. He claims
also, that the case of *Thatcher* v. *Railroad Company* itself recog-
nizes such a modified rule. But that case merely recognizes that
"there are several authorities declaring that to be the rule," and
further says, that as "neither the plaintiff nor any of his witnesses
were able to identify the locomotive by name or number," the
evidence, when admitted, was "clearly within the modified rule."
So that even if the modified rule was the correct one, the defendant
in that case had no good ground of complaint. This was not a
recognition of the modified rule, as the law in this state.

The defendant's counsel further contends that as the admis-
sibility of the evidence in the Thatcher case was finally sustained
on the ground that at the time it was offered the particular engine
had not been identified, so that in any event, the case was brought
within the modified rule claimed by the defendant, therefore the
broader rule stated by the court,—and which we have quoted,—
should be regarded as obiter dictum ; and we are asked to recon-
sider the whole question.

It may well be doubted whether the evidence in this case on the
part of the plaintiff, as to the identity of the engine, is sufficient to
bring the case within the modified rule contended for. It is true,
that during the trial, the defendant gave notice that it would fully
identify the engine, but proof of identity from the defendant at
that time would be of little service to the plaintiff to enable him

to investigate the character, or the previous history, as to fires, of that particular engine, if he was to be limited by the modified rule; and neither the notice that proof would be made, nor the fact that it was made subsequently by the defendant, can affect the question we are discussing. The engine was not identified, on the part of the plaintiff, by name or number, but only as the engine which drew the Dover and Dexter train that day. There was no mark upon it, known to the plaintiff, by which he could identify it elsewhere. He identified the train. Was he bound to know that the same engine hauled the Dover and Dexter train each day? The defendant says this engine was No. 95. True. No. 95 is the same identical engine day after day, but the engine drawing the Dover and Dexter train may be identical day after day, and it may not be. It would be manifestly difficult, if not impossible, for an injured party who could identify an engine only by the train it drew on a particular occasion, to obtain any information which, within the modified rule, would be of any service to him, except such as the servants of the railroad company were willing to communicate. And the authorities seem to be to the same effect. *Thatcher* v. *Railroad · Company* is in point. In *Grand Trunk Railway* v. *Richardson*, 91 U. S. 454, the trains were identified, but the court declared that the locomotives were not. So in *Diamond* v. *No. Pac. Ry. Co.*, 6 Montana, 580, (29 Am. & Eng. Railroad Cases, 117) ; *Piggott* v. *Eastern Counties Railway*, 3 M. G. & S. 228 ; *Koontz* v. *Oregon Ry., etc., Co.*, 20 Oregon, 3, (43 Am. & Eng. Railroad Cases, 11.) In many cases where the modified rule has been applied, the engines have been identified on the part of the plaintiff by name or number. *Inman* v. *Elb. Air L. R. R. Co.*, 90 Ga. 663, (35 Am. St. Rep. 232) ; *Ireland* v. *Cin., etc., R. R. Co.*, 79 Mich. 163 ; *Phila., etc., R. R. Co.* v. *Schultz*, 93 Pa. St. 341 ; *Erie Railway Co.* v. *Decker*, 78 Pa. St. 293. In *Henderson* v. *Phila., etc., R. R. Co.*, 144 Pa. St. 461, (27 Am. St. Rep. 652) cited by defendant's counsel, four trains had passed within an hour, the engine of one of which was identified by the plaintiff by number, the others not. It was unknown which engine, if any, caused the fire. The court gave the modified rule as applicable in case of

unidentified engine, and the broader rule, as stated by LIBBEY, J., in *Thatcher* v. *Railroad Company*, as applicable in other cases, saying "Where the offending engine is not clearly or satisfactorily identified, it is competent for the plaintiff to prove that the defendant's locomotives generally, or many of them, at or about the time of the occurrence, threw sparks of unusual size, and kindled numerous fires upon that part of their road, to sustain or strengthen the inference that the fire originated from the cause alleged."

But without regard to the question of identity, upon a careful reexamination of the decided cases, we are satisfied that the rule stated in *Thatcher* v. *Railroad Company* is supported by reason, and by the great weight of authority. We think that when the question at issue is whether, as a matter of fact, the fire was caused by any locomotive, other fires caused by defendant's locomotives, at about the same time and in the same vicinity, may be given in evidence for the purpose of showing the capacity of locomotive engines to set fires by the emission of sparks or the escape of coals. It is admissible as "tending to prove the possibility, and a consequent probability, that some locomotive caused the fire," language from *Grand Trunk Railway* v. *Richardson*, 91 U. S. 464, which has often been cited with approval. To show a possibility is the first logical step. That other engines of the same company, under the same general management, passing over the same track at the same grade, at about the same time, and surrounded by the same physical conditions, have scattered sparks or dropped coals so as to cause fires, appeals legitimately to the mind as showing that it was possible for the engine in question to do likewise. The testimony is illustrative of the character of a locomotive as such, with respect to the emission of sparks or the dropping of coals. If the possibility be proved, other facts and circumstances may lead to a probability, and then to satisfactory proof. A simple enumeration of some of the authorities which sustain these views may be useful. *Sheldon* v. *Hudson River R. R. Co.*, 14 N. Y. 218; *Field* v. *N. Y. Cent. R. R. Co.*, 32 N. Y. 339; *Diamond* v. *No. Pac. Ry. Co.*, 6 Mont. 580, (13 Pac. Rep. 367); (29 Am. & Eng. Railroad Cases, 117); *Piggott* v. *Ea. Counties Ry. Co.*, 3 M. G. & S. 229; *Koontz*

v. *Ore. Ry., etc., Co.,* 20 Oregon, 3, (43 Am. & Eng. R. R. Cases, 11); *Chicago, etc., Ry. Co.* v. *Gilbert,* 52 Fed. Rep. 711 ; *Campbell* v. *Mo. Pac. Ry. Co.,* 121 Mo. 340, (42 Am. St. Rep. 530); *Smith* v. *Old Colony, etc., R. R. Co.,* 10 R. I. 22 ; *Annapolis, etc., R. R. Co.* v. *Gantt,* 39 Md. 124 ; 1 Thompson on Negligence, 163.

The defendant has reserved exceptions to the admissson of certain testimony as to other fires, which it claims does not fall even within the rule we have declared. In one instance a witness testified to seeing fire in a pile of sleepers beside the railroad track soon after a locomotive had passed. This was admissible, and if on cross-examination the witness testified that he didn't know how the fire caught, or how long it had been burning, though "it couldn't have been there a great while," this does not render his testimony any the less admissible. The weight of it was for the jury.

It is claimed, in regard to one witness who testified to seeing a fire soon after an engine passed, that his statements on cross-examination respecting the time he saw the fire were inconsistent with his first testimony; and in regard to another witness who testified to seeing certain fires two or three days after the day of the ice-house fire, that a witness for the defendant recollected these last fires as having occurred between two and three months later, and hence too remote in time to be fairly within the rule.

Whatever the facts may have been, these are questions which cannot be settled upon exceptions. The testimony in chief as given by the witnesses was admissible. It was for the jury to consider, in view of all the testimony, whether the witnesses were credible and reliable. The court cannot exclude the testimony of a witness because it is inconsistent or inaccurate.

In considering the motion for a new trial, we do not think it profitable to extend this opinion by an analysis of the evidence. Many of the salient points have been stated already. The defendant introduced much testimony respecting engine No. 95, and upon other matters, to show the improbability that the fire was caused by its engine. The evidence was wholly circumstantial. Giving to the circumstances their due weight, we cannot say that the jury

were not authorized to conclude that the fire was communicated by the defendant's locomotive.

*Motion and exceptions overruled.*

*Cause remanded for hearing in damages, as stipulated by the parties.*