John Jerome ALEXANDER, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16172.

United States Court of Appeals
Eighth Circuit.

Oct. 20, 1959.

E. John Abdo, Minneapolis, Minn. (Haugland & Abdo, Minneapolis, Minn., was with him on the brief), for appellant.

Hyam Segell, Asst. U. S. Atty., St. Paul, Minn. (Fallon Kelly, U. S. Atty., St. Paul, Minn., was with him on the brief), for appellee.

Before GARDNER, VOGEL and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Defendant appeals from judgment and sentence imposed upon his conviction by

a jury on both counts of a two count indictment charging violation of 18 U.S.C.A. § 1462. Each count of the indictment charges that the defendant knowingly, wilfully, and unlawfully received at Minneapolis, Minnesota, a shipment by common carrier, originating in New York, of two obscene, lewd, lascivious, and filthy books, to wit: "Mr. Hot Rod" and "The Lion's Den", and other matter of an indecent character. Count I relates to a shipment received by defendant on or about March 3, 1958, and Count II to a shipment received on or about April 14, 1958. The Government in a bill of particulars, filed pursuant to court order sustaining defendant's motion therefor, stated that the "other matter of indecent character" in each count of the indictment included the following books, to wit: "The Sex Factory", "Becky McLane", "New Virginia Bell", and a number of other works specifically described.

Substantial evidence was offered to the effect that the defendant received at Minneapolis, Minnesota, interstate shipments of books by motor carrier from New York on March 3, 1958, and April 15, 1958, each of which shipments contained copies of "Mr. Hot Rod", "The Lion's Den", "Becky McLane", and "New Virginia Bell." The four books just named and "The Sex Factory", hereinafter discussed, were introduced and received in evidence. The Government's request for permission to read one of the allegedly obscene books to the jury was denied, the court stating in part:

"Well, they are both in evidence. I suppose they can read them, or in oral argument I suppose you can point out certain tracts that prove your points."

After Government counsel pointed out that under the Roth case [Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L. Ed.2d 1498] it would be necessary to read the book in its entirety if any of it was read, the court stated:

"I gather it is a request to read the whole book, being for you to read it. I will deny it."

Counsel for defendant moved that both "Mr. Hot Rod" and "The Lion's Den" be read to the jury, which motion was likewise denied.

The defendant did not take the witness stand. Two expert witnesses testified on behalf of the defendant. A professor of English at the University of Minnesota and a professor of Political Science at the same university, who also served as co-chairman of the Social Science Program, testified that they had analyzed "Mr. Hot Rod" and "The Lion's Den" as a basis for an opinion on the question of obscenity, and that in their opinion the books were not obscene and should be classified as contemporary literature and not as pornographic literature. The Political Science professor laid some foundation as an expert in the field of Social Science as it relates to the community, and expressed the opinion that on the basis of community attitude "Mr. Hot Rod" and "The Lion's Den" did not as "to the average person * * * have a predominant effect on the prurient interests." Other facts will be developed in the course of the opinion.

Defendant urges the following points as bases for reversal:

1. The court erred in admitting into evidence the booklet "The Sex Factory".

2. The court erred in taking judicial notice that the bookstore of appellant was located in an area generally known for prostitution.

3. The court erred in denying appellant's motion to have the two books, "Mr. Hot Rod" and "The Lion's Den", read to the jury in their entirety.

4. The court erred in denying appellant's motion for judgment of acquittal.

We shall discuss the errors asserted in the order above stated.

The book "The Sex Factory" was offered in evidence by the Government as Exhibit 7. Defendant's objection to the offer is, "Objected to, Your Honor, on the grounds that it is immaterial, irrelevant, and not a part of the Indictment, and no forewarning to the defendant." "The Sex Factory" is one of the

books listed in the bill of particulars "as other matter of indecent character." The offer of the exhibit is not vulnerable to the objection made.

■ Defendant in his argument here contends that there is no proof that "The Sex Factory" was a part of an interstate shipment. We do not believe that the objection made to the offer of the exhibit is broad enough to include the contention now made. In any event, no prejudicial error was committed in receiving Exhibit 7. William T. Hutcheson, an agent for the Federal Bureau of Investigation, gave positive testimony that the defendant told him that he had received "The Sex Factory" from the New York firm that supplied the other books in controversy. It is true that this book is not listed on the invoices offered in evidence.

■ In order to sustain a conviction it is not necessary to prove that the offense was committed on the exact date charged in the indictment. Proof that the crime was committed on a date other than that alleged, if it be within the period of limitations and before the indictment, is sufficient. Cwach v. United States, 8 Cir., 212 F.2d 520, 529.

■ There is no explanation in the record of defendant's statement to Hutcheson that he received the book in an interstate shipment. Other evidence was offered tending to show that Exhibit 7 was not involved in any interstate shipment. Under the evidence a fact question was presented for the jury on the question of whether "The Sex Factory" was a part of an interstate shipment.

■ Defendant next claims that the court erred in taking judicial notice of the fact that the area in which defendant's store is located is generally known for prostitution. In the course of the cross-examination of one of defendant's expert witnesses, the record discloses the following:

"Q. Would the fact that the book store is located right next door to the most notorious area of prostitution in Minneapolis have any effect on the segment of the public that these books might reach?

"Mr. Thompson: I object to that question, first of all, on the grounds that it is included in the matter not within the evidence of this case; secondly, because I would disagree with the premise that the counsel has stated for it and that it is not so located.

"The Court: I really don't know where it is, to tell the truth.

"Mr. Segell: Third and Hennepin, the location of the book store.

"Mr. Thompson: We know where the book store is located. I disagree with your premise that it is located right next door to that area as not being so; and I admit also on my personal basis and from observation that I would disagree with the statement.

"Now, if counsel can establish some evidence——

"The Court: The Court will take judicial notice that that area is generally known for prostitution.

"You may answer the question."

The witness then gave a negative answer to the question. The defendant moved for a mistrial "on the grounds that the Court took judicial notice of the fact that there are white slavery and prostitutes in and about this area, when the fact remains that the book store is between two very recognized hotels exactly across the street from where the new library will be."

We have serious doubt whether the trial court was justified in judicially noticing that the area in which defendant's business was located was generally known for prostitution. In 20 Am.Jur. Evidence, § 17, p. 48, it is stated, "Generally speaking, matters of judicial notice have three material requisites: (1) The matter must be a matter of common and general knowledge; (2) it must be well and authoritatively settled and not

doubtful or uncertain; (3) and it must be known to be within the limits of the jurisdiction of the court."

There are apparently a number of reputable places of business in defendant's area. We do not believe that it can properly be said that elements (1) and (2) appearing in the above quotation are established beyond dispute. It would have been far better for the trial court to have sustained the objection on the basis that the question assumed a fact not proven. If the character of the neighborhood was relevant upon the issues being tried in this case, proof of such character should have been required. The situation here is quite different from that in Varcoe v. Lee, 180 Cal. 338, 181 P. 223, relied upon by the Government. There, in a traffic violation case the court took judicial notice of the fact that the scene of the accident was in the business district in San Francisco. The principles stated in the Varcoe case are sound, but afford no support for the judicial notice involved in our present case. Prostitution is frequently carried on with some degree of concealment, and it is doubtful whether its existence in a particular area is generally known, or that it is so open and notorious as to be established beyond dispute.

■ The question remains as to whether the error complained of is prejudicial. To entitle the defendant to a reversal he must establish that the error was prejudicial. Neubauer v. United States, 8 Cir., 250 F.2d 838, 839; Bell v. United States, 8 Cir., 251 F.2d 490, 494; Davis v. United States, 8 Cir., 229 F.2d 181, 186. The facts judicially noticed had no direct bearing upon the issues involved in this case. The notice was taken at a time when defendant's expert witness was being cross-examined as to the standards by which he judged the effect of the books. Under the standards set out in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, the location of defendant's book store had no material bearing on the crucial issue relating to the obscenity of the books. The fact noticed related to the neighborhood and not directly to the defendant or his place of business. We do not believe that it can fairly be said that the fact judicially noticed placed the defendant in an unfavorable position with the jury, or that he suffered any prejudice as a result of the judicial notice taken.

■ Defendant's further claim that the court committed prejudicial error in overruling his motion to have "Mr. Hot Rod" and "The Lion's Den" read to the jury in open court is without merit. Both the Government and defendant had asked that the books be read to the jury. The books were in evidence as Government Exhibits and were taken into the jury room by the jury. The books constituted part of the evidence in the case, whether or not they were read to the jury in the court room. It was, of course, necessary for the jury to have knowledge of the contents of the books in order to properly arrive at their verdict. Whether such knowledge was obtained by their own reading of the books or by having the books read to them is a matter of no importance. The court instructed the jury in part as follows:

"Of course, you remember, in order to judge this matter, it's necessary for you to judge the material as a whole. Of necessity that is going to mean that you examine particularly the five exhibits which have been introduced, 'Mr. Hot Rod' and 'The Lion's Den,' and the other three pieces of evidence which are the principal pieces of evidence in this case. * * *

"Give it a fair and honest consideration and take your time about it, and then return with the verdict that you think is fair and just in this matter."

We believe that under the peculiar circumstances of this case it rested in the sound discretion of the court whether or not the books should be read to the jury in open court, and that the court did not abuse its discretion in refusing

permission to read the books to the jury. In Winters v. United States, 8 Cir., 201 F. 845, a case involving a prosecution for sending obscene letters through the mails, we held that the court's refusal to permit the reading of the letters to the jury did not constitute reversible error.

In our present case the jury consisted of eleven men and one woman. Our examination of the books leads us to believe that the reading of books of the type here involved in open court in the presence of both men and women would likely have proven embarrassing to everyone present in the court room. Moreover, the reading of the books would have required considerable time that might more profitably be used by the court and its staff in disposing of other litigation. One of the books contained 183 pages and the other, 184 pages. The defendant has cited no cases, nor have we found any, to the effect that failure to read the contents of exhibits which have been admitted in evidence and are available for examination in the jury room constitutes prejudicial error. We can see no reason why the jury could not reach as complete an understanding of the contents of the books through their own reading of such books in the jury room as they could have obtained through the reading of the books to them in open court.

■ We cannot assume that the jury failed to heed the court's instruction, heretofore quoted, or that the jury did not take sufficient time to adequately examine and consider the books. The case was submitted to the jury at 10:00 o'clock A. M. and the verdict was returned at 3:45 o'clock P. M. Insofar as the obscenity issue is concerned, the verdict of guilty would be justified if the jury found that any one of the books described in the indictment was obscene. We cannot say as a matter of law that the jury did not have a sufficient opportunity in the period during which they deliberated to make an adequate examination of the books in question.

■ As a final point defendant urges that the court erred in denying his motion for acquittal made at the close of all the evidence. We agree with defendant's contention that the Government, in order to sustain his conviction, is required to prove beyond a reasonable doubt the material elements of the offense charged, which are: (1) receipt in interstate shipment, (2) knowledge of contents of the matter at the time of receipt, and (3) obscenity of the matter.

Defendant concedes that the first element, above stated, was reasonably established with respect to "Mr. Hot Rod", "The Lion's Den", "Becky McLane", and "New Virginia Bell", but contends no such proof was supplied with reference to "The Sex Factory". The record as a whole shows that the Government is relying principally on the two books first named to sustain defendant's conviction. In any event, the facts heretofore set out will adequately support a finding that there was an interstate shipment of "The Sex Factory".

There is also substantial evidence to support a finding that the defendant had knowledge of the contents of the books at the time he received them. Defendant had told the Government agent that he had read "Mr. Hot Rod" and "The Lion's Den". It is true that he did not state specifically when he had read the books. Defendant's source of supply for the two shipments of books here involved dealt extensively in obscene books and pictures. Defendant had visited this supplier in New York on several occasions before receiving the shipments involved, and had previously purchased indecent pictures and books similar to "Mr. Hot Rod" and "The Lion's Den". There is also evidence that defendant stocked a substantial supply of books of a similar character and that he kept them for the most part in a separate section of his store.

■ On the issue of obscenity the test stated in Roth v. United States, supra, 354 U.S. at page 489, 77 S.Ct. at page 1311, is "whether to the average

person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest."

██ We have made a careful examination of the books involved in this indictment and are satisfied that a fact question is fairly presented on the obscenity issue. The court properly instructed the jury on this issue, pursuant to standards prescribed in the Roth case, supra.

Defendant makes the contention that his expert witnesses expressed the opinion that the books are not obscene, and that their testimony has not been contradicted.

██ It is for the jury to determine the weight of all testimony including expert testimony. The jury should consider expert testimony, but they are not bound to accept the opinions expressed by the expert witnesses. The jurors are not compelled to substitute the opinion of the expert witnesses for their own practical judgment arrived at upon the basis of all the evidence. United States v. City of Jacksonville, Arkansas, 8 Cir., 257 F.2d 330, 333, 335; Burnett v. Central Nebraska Public Power & Irrigation District, 8 Cir., 125 F.2d 836, 838. The jury had before them the books charged to be obscene. The primary responsibility for determining the obscenity issue is upon the jury. The issue here involved is not so complex that it can be said that the average juror is not capable of applying the obscenity test to the books in controversy. The jurors are entitled to make their own evaluation of the books upon the basis of all the evidence before them under the guidance furnished by the court's instructions.

We have given full consideration to all of the errors urged by the defendant. The defendant has had a fair trial. The defendant has failed to establish that the trial court has committed any error prejudicial to him.

The judgment appealed from is affirmed.