**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Edward MISHKIN, Defendant-Appellant. No. 337, Docket 27900.**

United States Court of Appeals Second Circuit.

Argued April 29, 1963.

Decided May 20, 1963.

Maurice Edelbaum, New York City, for appellant.

Thomas F. Shea, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty. for Southern District of New York, Robert J. Geniesse, Asst. U. S. Atty., New York City, on the brief), for appellee.

Before CLARK, SMITH, and HAYS, Circuit Judges.

HAYS, Circuit Judge.

Defendant appeals from a judgment of conviction for conspiracy [1] to import obscene matter into the United States,[2]

---

1. 18 U.S.C. § 371.

The indictment also included a count charging a substantive violation of 18 U. S.C. § 1462, on which the jury returned a verdict of acquittal, and two counts charging substantive and conspiracy violations of 18 U.S.C. § 1465, which were dismissed with the Government's consent at the close of its case.

2. "Importation or transportation of obscene matters

"Whoever brings into the United States * * * or knowingly uses any express company or other common carrier, for carriage in interstate or foreign commerce—

"(a) any obscene, lewd, lascivious, or filthy books, pamphlet, picture, motion-

entered upon the verdict of a jury. Appellant concedes that the books in question were obscene, but contests the sufficiency and propriety of the evidence of his knowing participation in the conspiracy to import them. We affirm the judgment of conviction.

The Government's principal witness was the defendant John Stamp, a waiter on the Queen Mary, who pleaded guilty prior to the trial. Stamp testified that one John Monk, a fellow waiter, introduced him to two persons in Southampton, England, who, after assurances by Monk that Stamp was "all right", asked Stamp to take some books to New York City to a person named "Eddie." [3] Monk later delivered a package to Stamp aboard the ship, and told him not to take the package directly to "Eddie" but to deposit it in a public locker in a designated subway station in New York City. Stamp was then to take the locker key to a certain book store near Times Square, to ask there for "Eddie", and to give "Eddie" the key, telling him it was "a present from the boys in England, and John would see him next trip."

Stamp opened the package when the Queen Mary docked in New York and found that it contained twelve copies of an obscene book. He was arrested at the pier when he attempted to smuggle in the package. After brief interrogation, Stamp disclosed the details of the plan and agreed to cooperate with customs officials by carrying on as he had been instructed to do but under the surveillance of customs inspectors. The following morning Stamp deposited the package in a subway locker in accordance with his instructions and then proceeded to the book store where he inquired for "Eddie". The clerk of whom he inquired shouted "Eddie" several times toward the back of the store. Appellant Mishkin appeared. Stamp said to him, "I have a key here for you, a present from the boys in England. John Monk will see you next trip." Appellant took the key and answered "okay" or "all right". Stamp then left the store. Appellant showed no surprise at Stamp's remarks or at his handing him the key. Stamp did not tell appellant the location of the locker. There was no indication of its origin on the key itself, other than the number T184.[4]

Approximately three hours later defendant William Pratt [5] came to the locker, which was under the surveillance of customs inspectors, opened it with a key, and removed the package. Pratt was arrested shortly after leaving the subway station. A notation of appellant's unpublished home telephone number was found in Pratt's wallet at the time of his arrest, together with a note to call "Eddie or Frank" at the book store, and the telephone number of the store.

■ Appellant's first contention is that Stamp's testimony regarding events following his arrest was inadmissible. He cites the familiar principles that arrest terminates a conspirator's participation in a conspiracy, and that declarations of a conspirator made after the conspiracy is ended do not bind co-conspirators. See, e. g., Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949). But these principles are wholly inapplicable to the present case. Hearsay statements made after a conspirator's arrest are inadmissible

---

picture film, paper, letter, writing, print, or other matter of indecent character; * * *

"Shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense and shall be fined not more than $10,000, or imprisoned not more than ten years, or both, for each such offense thereafter." 18 U.S.C. § 1462.

3. Although named as defendants in the indictment, Monk and his alleged English

co-conspirators have not been apprehended.

4. Stamp's testimony regarding the transaction at the store was corroborated by a customs inspector who observed the entire transaction while pretending to browse through books.

5. Pratt, named as a defendant in the indictment, pleaded not guilty but became a fugitive prior to the trial.

not because they were made after the arrest, but because they are hearsay to which the usual exception to the hearsay rule of statements by co-conspirators in furtherance of the conspiracy can no longer apply. Lutwak v. United States, 344 U.S. 604, 617–618, 73 S.Ct. 481, 97 L.Ed. 593 (1953). In the present case, Stamp's testimony as to the period after his arrest related solely to his own acts and to one conversation with the defendant.[6] This testimony, which was subject to cross-examination, was not hearsay, and was clearly admissible. See United States v. Cohen, 197 F.2d 26, 29 (3d Cir., 1952).

■■ Appellant next contends that Stamp's testimony as to the arrangements made in England was inadmissible hearsay. But, since Stamp's testimony regarding the events following his arrest sufficiently connected Mishkin to the conspiracy, the earlier declarations of his co-conspirators were admissible against him under the familiar principle that declarations made by one conspirator in furtherance of the conspiracy are admissible against all co-conspirators. See, e. g., United States v. Lev, 276 F.2d 605, 609 (2d Cir.), cert. denied 363 U.S. 812, 80 S.Ct. 1248, 4 L.Ed.2d 1153 (1960).

■ But this principle, appellant next argues, does not apply to the notations found on Pratt's person after his arrest, since the Government did not establish the time when the notations were made, and therefore did not establish that they were made in furtherance of the conspiracy. Here appellant overlooks the essential point that for the purpose for which they were admitted, viz., the connection of Pratt with Mishkin, the notations were not hearsay. They were admitted not to prove Mishkin's telephone number and connection with the bookstore, but as part of the proof that Pratt had received the key to the subway locker from Mishkin. See VI Wigmore, Evidence § 1788 (3d Ed. 1940).

■ Appellant argues that even if all the evidence was properly admitted, it was insufficient to sustain the conviction because Mishkin's knowledge of the obscene character of the books was not proved. As scienter is a necessary element of the substantive crime of importing obscene matter, 18 U.S.C. § 1462; cf. Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959), it is also a necessary element for conviction of conspiracy to commit the substantive offense. Cf. United States v. Massiah, 307 F.2d 62 (2d Cir., 1962). But in proving scienter, "eyewitness testimony of a bookseller's perusal of a book" is unnecessary. "The circumstances may warrant the inference that he was aware of what a book contained, despite his denial." Smith v. California, supra, 361 U. S. at 154, 80 S.Ct. at 219 (1959). See also Kahm v. United States, 300 F.2d 78, 86–87 (5th Cir.), cert. denied 369 U.S. 859, 82 S.Ct. 949, 8 L.Ed.2d 18 (1962).

■ In the present case, the obscene character of the books is conceded. They were to be delivered to Mishkin by depositing them in a subway locker, and delivering the key to Mishkin. When presented with the key, Mishkin manifested no surprise, and agreed that the source of the books, John Monk, should see him "next trip." He did not ask where the locker was located, but Pratt, carrying notations relating to Mishkin, including his unlisted telephone number, nonetheless arrived at the locker and removed the books some three hours later. From the clandestine manner in which the delivery to Mishkin was to be effected, and from Mishkin's apparent familiarity with the scheme, the jury could properly infer that he was aware of the obscene nature of the matter to be delivered. While Mishkin may not have known the exact title or contents of the books, the Government was not required to show his familiarity with every detail of the conspiracy once his knowledge of its general purpose had been shown. Cf.

6. The only exception, relating to Stamp's agreement to cooperate with the authori-ties, was brought out by appellant on cross-examination.

United States v. Agueci, 310 F.2d 817, 825 (2d Cir., 1962).

■ A final point deserves mention. At the trial, the defendant "conceded" that the books were obscene and urged that by virtue of the concession, it was unnecessary and prejudicial to admit the books in evidence and to submit them to the jury. The court ruled that the books would be admitted.

The principles stated in Parr v. United States, 255 F.2d 86, 88 (5th Cir.), cert. denied 358 U.S. 824, 79 S.Ct. 40, 3 L.Ed. 2d 64 (1958), amply support the ruling of the trial Judge:

> "The Government was permitted to exhibit to the jury some of the film over the appellant's objection and offer to stipulate that the film was lewd and obscene. This, the appellant says, would tend to arouse the sympathies and prejudices of the jury, so that the admission of the evidence was an error prejudicing his right to a fair and impartial trial. The admission would, to be sure, relieve the Government of its burden of proving the lewd and obscene character of the film. But it does not necessarily follow that the film should have been excluded from the view of the jury. It is a general rule that 'A party is not required to accept a judicial admission of his adversary, but may insist on proving the fact.' 31 C.J.S. Evidence § 299, p. 1068. The reason for the rule is to permit a party 'to present to the jury a picture of the events relied upon. To substitute for such a picture a naked admission might have the effect to rob the evidence of much of its fair and legitimate weight.' Dunning v. Maine Central Railroad Co., 91 Me. 87, 39 A. 352, 356, 64 Am.St.Rep. 208. Such rule, we think, should apply in a case such as this where the pictures offered in evidence are of the gist of the offense charged rather than descriptive or illustrative of a scene or an occurrence."

While there is some merit also in the contrary view, the question of admissibility was addressed to the sound discretion of the district court. We cannot say that that discretion was abused.

Appellant's remaining points are without merit.

Affirmed.