**UNITED STATES of America,
Plaintiff,**

v.

**Milton LUROS et al., Defendants.**

**Crim. No. 65–Cr–3007.**

United States District Court
N. D. Iowa, W. D.

Nov. 4, 1966.

See also D.C., 243 F.Supp. 160.

Donald E. O'Brien, U. S. Atty., Sioux City, Iowa, Theodore Kleinman, Crim. Div., Dept. of Justice, Washington, D. C., for plaintiff.

Stanley Fleishman, Hollywood, Cal., Percy Foreman, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER.

HANSON, District Judge.

This is a ruling on three separate motions filed by the defendants in this case.

On March 24, 1965, a grand jury for this District returned a 25-count indictment against the defendants. Count 1 charged a violation of Title 18, United States Code, Section 371, in that all of the defendants conspired together to violate the Federal obscenity statutes. Counts 2 through 8, 10 through 12, and 19 through 25 charged that certain defendants used the mails for the carriage and delivery of obscene books and magazines in violation of Section 1461 of Title 18. Additional violations of Section 1461 were charged in Counts 9 and 15, in that certain defendants used the mails for the carriage and delivery of advertisements giving information where, how, from whom, and by what means obscene books and magazines might be obtained. Counts 13, 14, and 16 through 18 charged that certain defendants used a common carrier for carriage of obscene magazines in interstate commerce in violation of Section 1462 of Title 18. Each substantive count alleged that the obscene matter was mailed or shipped from North Hollywood, California, to a point in this District. The bulk of the materials named in the indictment consisted of nudist magazines, so-called "girlie" magazines, and paperback novels primarily depicting the activities of lesbians.

Prior to the commencement of trial, the defendants moved to dismiss the indictment, to transfer venue, for suppression of certain evidence subpoenaed by the grand jury, and for a bill of particulars. On June 29, 1965, this Court denied defendants' motions. See United States v. Luros, 243 F.Supp. 160, N.D. Iowa, 1965.

The trial of this cause commenced on October 18, 1965. The materials named in the indictment and introduced into evidence by the Government were read by the jurors in open court immediately prior to the conclusion of the Government's case. On December 17, 1965, after having called forty-one witnesses to testify directly and having introduced the testimony of eighteen others by stipulation, the Government rested. The defendants then moved to dismiss the indictment and for a judgment of acquittal. Oral arguments were heard and both sides submitted numerous authorities and exhibits from previously adjudicated obscenity cases for the Court's consideration. On January 4, 1966, this Court denied the defendants' motion. The following day the defendants rested without offering any evidence and renewed their motion for judgment of acquittal. At that juncture, all the evidence having been submitted, the Court dismissed Count 1, the conspiracy count, and Counts 9, 15, 16, 17, 18, and 19 and reserved further decision on the defendants' motion.

On January 11, 1966, the following nudist magazines and paperback novels were submitted to the jury for their consideration in connection with the remaining counts of the indictment:

"Teenage Nudist", Vol. 1, No. 1; "Nudist Photo Field Trip", No. 6; "Urban Nudist", Vol. 1, No. 8; "Urban Nudist", Vol. 1, No. 9; "Urban Nudist", Vol. 1, No. 11; "Sun Era", Vol. 1, No. 8; "Sun Era", Vol. 1, No. 10; "Sun Era", Vol. 2, No. 2; "Sun Era", Vol. 2, No. 4; "Nudist Colorama", No. 2; "Nudist Colorama", No. 3; "Popular Nudist", Vol. 1, No. 3; "Popular Nudist", Vol. 1, No. 4; "Nudist Week—Quarterly Notebook No. 2"; "Lesbian Sin Song"; "Two Women in Love"; "Pleasure House"; "Lesbian Alley"; "The Three Way Apartment"; and "The Affairs of Gloria". On January 14, 1966, the jury returned guilty verdicts on all counts

before it. Defendants have now renewed their motion for judgment of acquittal on which this Court had previously reserved decision pursuant to the provisions of Rule 29(b), Federal Rules of Criminal Procedure. They have also filed an alternative motion for a new trial, Fed.R.Crim.P. 33, and a motion in arrest of judgment, Fed.R.Crim.P. 34.

 Rule 29(a), Federal Rules of Criminal Procedure, directs the Court "to order the entry of judgment of acquittal * * * if the evidence is insufficient to sustain a conviction * * *". In measuring the sufficiency of the evidence, this Court must view the evidence in the aspect most favorable to the prevailing party—in this instance, the Government. National Dairy Products Corp. v. United States, 350 F.2d 321, 8 Cir., 1965; Apel v. United States, 247 F.2d 277, 8 Cir., 1957; McKenna v. United States, 232 F.2d 431, 8 Cir., 1956. If, when viewed in this light, the evidence is legally capable of allowing a jury to become persuaded of guilt, then the motion for judgment of acquittal must be denied. National Dairy Products Corp. v. United States, supra; cf. Beatrice Foods Co. v. United States, 312 F.2d 29, 8 Cir., cert. denied, 373 U.S. 904, 83 S.Ct. 1289, 10 L.Ed.2d 199, 1963.

In support of their motion for judgment of acquittal, the defendants advanced three arguments. First, they assert that the evidence presented at the trial was insufficient to establish that the defendants knowingly caused the transportations and mailings for which they have been convicted. Second, they maintain that the evidence offered by the Government to prove scienter was similarly insufficient. Finally, the defendants urge that the materials found to be obscene by the jury are constitutionally protected and that, in any event, the Government did not meet its burden of proving that the materials were obscene.

All of the questions raised have been heretofore considered by the court. Rulings on these questions have been made in the record and by the prior written rulings. Therefore, any extensive discussion of such issues will not be repeated here.

The court has carefully and thoroughly considered the decisions on the issues involved in this case. See Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498; Jacobellis v. State of Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793; Manual Enterprises, Inc. v. Day, 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed.2d 639; A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Commonwealth of Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1; Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 969, 16 L.Ed.2d 31; Mishkin v. State of New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56. This court has also considered the various per curiam decisions by the Supreme Court together with the decisions of the Circuit Courts, the Federal District Courts, and the State Courts.

 The court concludes that as to the statutes involved in this case, Sections 1461 and 1462 of Title 18, of course include some issues other than the obscenity issue, i. e., the scienter and the mailings. As to the defendants Milton Luros, Sun Era, Inc., American Art Agency, Inc., Parliament News, Inc. and London Press, Inc., the evidence is in all respects substantial and supports the verdicts and all the motions of these defendants will be overruled in each of their separate subdivisions and in their entirety.

As to the other named defendants, the motion for judgment of acquittal will be sustained on all Counts in which they are named for lack of evidence to support the charges.

The Government was required to prove that each defendant knew the contents of the material and the requisite knowledge of the mailing as set forth in and explained in the instructions. As to the defendants Beatrice B. Luros, Stanley E. Sohler, Melvin Friedman, Elmer A. Batters, Harold Straubing, Paul Wisner, in-

dividually and d/b/a Regent House, Sam Merwin, Jr., and Richard E. Geis, the Government failed to prove one or both of these two separate requirements of knowledge.

■ As to Milton Luros and the four corporations, the evidence was sufficient. The knowledge of those who worked for and under Milton Luros can be imputed to the corporations and to Milton Luros. See Fabian v. United States, 358 F.2d 187 (8th Cir.); Reistroffer v. United States, 258 F.2d 379 (8th Cir.). These cases show that this rule is not limited to proving a conspiracy. See also American Fur Co. v. United States, 2 Pet. 358, 27 U.S. 358, 364, 7 L.Ed. 450; United States v. Annunziato, 293 F.2d 373, 378 (10th Cir.).

Accordingly, it will be Ordered that judgment of conviction on the jury verdicts will be entered against Milton Luros, American Art Agency, Inc., Sun Era, Inc., Parliament News, Inc., and London Press, Inc. on all counts.

The defendants have challenged that the materials here are not obscene as a matter of law. The function of the court is set forth in United States v. West Coast News Company, 6 Cir., 357 F.2d 855, 857:

"Although it was the jury's function to make the final decision as to whether crimes were committed by the commerce in this book, we are put to an initial and independent judgment because of appellants' contention that, as a matter of law, the book is not obscene.

We are properly charged with such responsibility by Jacobellis v. State of Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964), where the United States Supreme Court by footnote reference (p. 188, 84 S.Ct. p. 1678) finds relevant one author's observation that 'This obligation—to reach an independent judgment * * * appears fully applicable to findings of obscenity by juries, trial courts, and administrative agencies. The Supreme Court is subject to that obligation, as is every court

before which the constitutional issue is raised.' "

Also in Alexander v. United States, 271 F.2d 140 (8th Cir.) the court said: "The primary responsibility for determining the obscenity issue is upon the jury." The *Roth* standards as enunciated there and in the later cases do coalesce.

■ The defendants argue that the conviction violates the 9th and 10th Amendments, the argument being that the State is given wide latitude which cannot be curtailed by a national federal censorship. This argument was fully answered in the *Roth* case. There the court said:

"Roth's argument that the federal obscenity statute unconstitutionally encroaches upon the powers reserved by the Ninth and Tenth Amendments to the States and to the people to punish speech and press where offensive to decency and morality is hinged upon his contention that obscenity is expression not excepted from the sweep of the provision of the First Amendment that 'Congress shall make no law * * * abridging the freedom of speech, or of the press * * *.' That argument falls in light of our holding that obscenity is not expression protected by the First Amendment."

At least since Smith v. People of State of California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205, scienter has been a requirement in criminal cases on obscenity. In Mishkin v. State of New York, supra, 383 U.S. p. 511, 86 S.Ct. p. 958, the court stated that it was unnecessary to define that day "what sort of mental element is requisite to a constitutionally permissible prosecution." It was held that the New York test was permissible. The court noted that it was similar to Section 251.4(2) of the Model Penal Code. In Ginzburg v. United States, supra, the court did not directly discuss scienter except to the extent that it coincides with a pandering element. See Roth v. United States, supra, 354 U.S. p. 495, 77 S.Ct. 1304 (Warren, C. J. concurring). In United States v. West

Coast News Company, supra, the court said:

"A specific criticism was the District Judge's refusal to tell the jury that in addition to proving that defendants knew the contents of the accused books, it was the government's burden to prove that the individual defendants also knew that such contents were in fact obscene. The Court refused to charge that: 'If you believe that defendants were honestly ignorant of the 'obscenity' of the books, if you should find they were obscene, then the defendants should be acquitted.'

The Court did tell the jury:

'Therefore, before you may convict, in addition to finding a book is obscene, you must find * * * as to each defendant that he knew the contents of the book and knowingly caused it to be mailed or so carried here,'

and, further, that:

'If a defendant was honestly mistaken as to the contents of any book or books, or if he has no knowledge of the contents of any book or books, or if you have a reasonable doubt as to such defendant's knowledge of the contents of any book or books, then as to such defendant * * * you must find the defendant not guilty.'

In the context of this case and our above expressed view of the obvious obscenity of Sex Life of a Cop, we find no reversible error in the Court's refusal of the proffered request. (Citations omitted). In Rosen, [v. United States, 161 U.S. 29, 16 S.Ct. 434, 40 L.Ed. 606,] the Supreme Court said:

'Every one who uses the mails of the United States for carrying papers or publications must take notice of what, in this enlightened age, is meant by decency, purity, and chastity in social life, and what must be deemed obscene, lewd and lascivious,' * * * and the Court was thereby finding without error refusal to give a request substantially the same as the one here refused. Notwithstanding the expanding liberality that has followed *Rosen* the above

quote was appended without criticism as footnote 28 to *Roth*".

■ Of course, the definitions of the word "knowledge" or "scienter" have meant different things at different times under varying circumstances. See 79 C.J.S. p. 456; 38 Words and Phrases, p. 330. See also Kahm v. United States, 300 F.2d 78 (5th Cir.), p. 86, Note 15; Alexander v. United States, supra. (Actually, in those two cases the question on the scienter instructions was not properly raised or questioned.) Schindler v. United States, 9 Cir., 208 F.2d 289. While, as the Supreme Court noted in Mishkin, the extent of the scienter question is still somewhat an open one, the instruction as given in the present case is substantially the same as was given in the *West Coast News* case, the *Kahm* case, and the *Alexander* case. The rulings on the instructions are in the record. There is no error therein. In Mishkin v. People of State of New York, supra, the court said: "The circumstances may warrant the inference that he was aware of what a book contained despite his denial." The evidence in the present case complied with this rule.

It is also suggested that the Court erred in denying defendants' motions for change of venue and for a bill of particulars. The reasons for the Court's action were discussed in the opinions which it filed prior to the commencement of this trial. See United States v. Luros, supra. Nothing has occurred during the course of the trial of this case to make the Court doubt the propriety of its previous decisions.

■ Defendants, in their third and final motion, seek an arrest of judgment. They argue that this Court was without jurisdiction to try this offense, that the surviving counts of the indictment failed to charge an offense, and that the relevant federal obscenity statutes are unconstitutional both on their face and as applied in this case. Defendants' contentions must be decided from the face of the record. United States v. Bradford, 194 F.2d 197, 2 Cir., 1952; cert. denied 343 U.S. 979, 72 S.Ct. 1079, 96 L.Ed.

1371; Sutton v. United States, 157 F.2d 661, 5 Cir., 1946. This Court has considered defendants' motion and finds it lacking in merit for the reasons stated in its earlier opinion in this case. See United States v. Luros, supra; United States v. West Coast News Co., supra, 357 F.2d pp. 861, 863.

After reading the many profound expressions of the most learned of the legal profession, I have resisted the temptation to add to the confusion. If the philosophy surrounding the Comstock Rule is dead, we should recognize it.

Charges pursuant to a criminal statute have been preferred. The charges have been processed in accordance with orthodox procedure. More than average invitation was extended by the Court to the Government and to the defendants for the reception of evidence, each was equally stubborn and persistent in its manner of approach. This perhaps will be crucial as this case travels the road of ultimate destination.

The Court stayed these proceedings ever looking for indicia and help in final adjudication. The process was like waiting for "the ship that never returned." The climax of confusion in the field of obscenity was again this very day expressed by the Federal Court, Second Circuit, in reversing United States v. One Carton Positive Motion Picture Film, D.C., 247 F.Supp. 450. The learned Court said:

"It should be the function of the courts to observe 'contemporary community standards' as they are rather than as black-robed Anthony Comstocks would create them. The dangers of judicial censorship have been so thoroughly and so well expounded in various of the opinions in Memoirs, Ginsburg [v. United States, 383 U.S. 463, 86 S.Ct. 969,] and Mishkin [v. State of New York, 383 U.S. 502, 86 S.Ct. 958,] that further exposition would be superfluous. But 'prurient interest,' 'patent offensiveness' and 'customary limits of candor' (meaning-ful terms as bases for decision) can be defined only in the light of contemporary community standards. 'Prurient interest' to the average person as a factor ought to be discarded since Mishkin now restricts the term to mean prurient interest to a group interested in the prurient. * * * " 367 F.2d 889.

And so the solution essential for extinguishment of the fiery controversy is still being sought; I hope not in vain.

It is, therefore, hereby ordered and adjudged as follows, to-wit: That the motion for judgment of acquittal is hereby sustained as to defendant Beatrice Luros in Counts 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 20, 21, 22, 23, 24, and 25, and sustained as to defendant Stanley E. Sohler in Counts 2, 3, 4, 6, and 13, and sustained as to defendant Melvin Friedman in Counts 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 20, 21, 22, 23, 24, and 25, and sustained as to defendant Elmer A. Batters in Counts 4, 5, 6, 7, 8, and 13, and sustained as to defendant Harold Straubing in Counts 20, 21, 22, 23, 24, and 25, and sustained as to defendant Paul Wisner, individually and d/b/a Regent House in Counts 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 20, 21, 22, 23, 24, and 25, and sustained as to defendant Sam Merwin, Jr., in Counts 20, 21, and 23, and sustained as to defendant Richard E. Geis in Count 24, and the motion is overruled as to defendant Milton Luros in Counts 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 20, 21, 22, 23, 24, and 25, and overruled as to defendant Sun Era, Inc. in Counts 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, and 13, and overruled as to defendant American Art Agency, Inc. in Counts 20, 21, 22, 23, 24, and 25, and overruled as to defendant Parliament News, Inc. in Counts 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 20, 21, 22, 23, 24, and 25, and overruled as to defendant London Press, Inc. in Counts 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 20, 21, 22, 23, 24, and 25.

It is further ordered and adjudged that the motion for arrest of judgment and motion for new trial are hereby overruled.