**UNITED STATES of America,
Plaintiff,**

**v.**

**Herbert RUBIN, Defendant.**

**No. 3989–CD.**

United States District Court,
C. D. California.

May 7, 1970.

---

Wm. Matthew Byrne, Jr., U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Chief Criminal Division, Theodore E. Orliss, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Douglas Dalton and Robert Payson, Beverly Hills, Cal., for defendant.

## MEMORANDUM OPINION

HAUK, District Judge.

Defendant Herbert Rubin is charged in a one count indictment with a violation of 18 U.S.C. § 1462 [1] for knowingly having used American Airlines, a common carrier, to transport from New York City to Los Angeles International Airport six cartons containing 526 black and white reels of motion picture films "depicting men and women in various natural and unnatural acts of sexual intercourse and which films were obscene, lewd, lascivious, and filthy" within the meaning of § 1462.

After a lengthy evidentiary hearing on Defendant's motion, this Court suppressed four of the cartons, holding that they had been obtained pursuant to an illegal search and seizure because agents of the F.B.I., without a search warrant, had participated in the opening of these four cartons. Corngold v. United States, 367 F.2d 1 (9th Cir., 1966). Defendant's motion to suppress the other two cartons was denied because these packages had been opened by employees of American Airlines without the participation of any Federal agents. Gold v. United States, 378 F.2d 588 (9th Cir., 1967).

Thereafter, trial commenced and the two cartons with their reels of film were introduced in evidence, both Defendant and Government stipulating that the films were obscene within the meaning of 18 U.S.C. § 1462. After five days of non-jury trial, Defendant having waived his Constitutional right to a jury trial and having waived Special Findings under Fed.R.Crim.P. 23(c) [2], this Court

---

1. 18 United States Code § 1462

§ 1462. Importation or transportation of obscene matters

Whoever brings into the United States, or any place subject to the jurisdiction thereof, or knowingly *uses* any express company or other common carrier, for carriage in interstate or foreign commerce—

(a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character; or

(b) any obscene, lewd, lascivious, or filthy phonograph recording, electrical transcription, or other article or thing capable of producing sound; or

(c) any drug, medicine, article, or thing designed, adapted, or intended for preventing conception, or producing abortion, or for any indecent or immoral use; or any written or printed card, letter, circular, book, pamphlet, advertisement, or notice of any kind giving information, directly or indirectly, where, how, or of whom, or by what means any of such mentioned articles, matters, or things may be obtained or made; or

Whoever knowingly takes from such express company or other common carrier any matter or thing the carriage of which is herein made unlawful—

Shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense and shall be fined not more than $10,000 or imprisoned not more than ten years, or both, for each such offense thereafter.

2. Rule 23 Federal Rules of Criminal Procedure

Rule 23
*Trial by Jury or by the Court*

(a) Trial by Jury. Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government.

(b) Jury of Less Than Twelve. Juries shall be of 12 but at any time before verdict the parties may stipulate in writing with the approval of the court that the jury shall consist of any number less than 12.

(c) Trial Without a Jury. In a case tried without a jury the court shall make a general finding and shall in addition on

took the case under submission and requested both sides to submit briefs on the meaning of "uses any * * * common carrier" as employed in 18 U.S.C. § 1462.

Having received and analyzed the briefs and considered the authorities offered by both sides, this Court must now determine whether the Defendant, Herbert Rubin, has "used" a common carrier within the meaning of § 1462. In addition, this Court must decide whether any *scienter* is necessary in order to find a violation of § 1462, and, if *scienter* is required, whether the Defendant, Herbert Rubin, had the requisite element.

The facts of the case are relatively simple, although the evidence presented by the prosecution at the trial was necessarily complex. Since Defendant has waived his right to Special Findings, this Court is not required to elaborate on the facts, but in view of the extensive efforts expended by counsel for both parties and their comprehensive coverage of the facts, this Court feels obligated to present a complete discussion of the route and reasoning by which we find that the Defendant Herbert Rubin is guilty beyond any reasonable doubt of a violation of 18 U.S.C. § 1462.

On either Thursday, September 21 or Friday, September 22, 1967, an unidentified person came with six cartons to a freight forwarding company run by Anthony J. and Mildred Comparato in New York City. According to the Comparators' testimony, the depositor of the cartons stated that the "L & B Company," 636 Broadway, New York City, was the company making the deposit and that the receiver was to be one "H. Ross". The packages were to be marked "Hold at Airport, Los Angeles, California". An air freight bill of lading, or what is known as an air waybill, was prepared by the Comparatos with these facts, and the air waybill and the cartons were delivered to the American Airlines Freight Depot and Freight Forwarding Office at Kennedy Airport.

On Monday, September 25, or Tuesday, September 26, 1967, Mr. Comparato in New York received a phone call from a man in Los Angeles calling himself "Ross", who gave the air waybill number, said that the shipment of six cartons had not been received in California, and asked for information about the shipment. The Comparatos thereupon placed a tracer with American Airlines which could not immediately locate the six cartons. Mr. Comparato then called "Ross" collect in Los Angeles, and informed him that they had been unable to locate the six cartons. Parenthetically, we note that the telephone number given to Comparato by "Ross", which is the same number Comparato used in his collect call to "Ross", was listed to the Defendant Rubin at his residence in Los Angeles (Encino).

On Monday, September 25, or Tuesday, September 26, 1967, to be as accurate as the Comparatos could make it, Mrs. Comparato received a call from a person who claimed to be the original depositor of the six cartons. The caller asked the Comparatos to retrieve the packages and not to ship them to Los Angeles.

Thereafter, another call came from "Ross" in Los Angeles, and this call like the first call by "Ross" to Mr. Comparato, was charged in phone company records to Defendant Rubin's home number. Mrs. Comparato told him that the six cartons had been found, and further that the depositor had changed his mind and wanted her to retrieve the cartons. At this point, "Ross" told Mrs. Comparato to disregard the instructions of the depositor and to ship the six cartons to Los Angeles. Mrs. Comparato normally followed the depositor's instructions. In this instance, however, she followed the receiver's instructions because "Ross" had the waybill number; the cartons

request find the facts specially. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact appear therein.

had originally been ordered by the depositor to be shipped "collect"; American Airlines had refused to release the cartons until they had some word directly from the shipper; and she had been unable to locate the "L & B Company" at 636 Broadway, New York City. So on Thursday, September 28, 1967, she ordered American Airlines to ship the six cartons to Los Angeles.

In the meantime, on Monday, September 25, 1967, Mr. Shipman, an American Airlines Freight System employee in New York City, had discovered the six unmarked cartons in the American Airlines Freight Office at Kennedy Airport. Mr. Shipman opened two of the boxes and examined the reels of films that were contained in the cartons. Believing the films were obscene, he called an American Airlines Security Officer, Mr. Lynch, who after looking at one of the reels of films called the F.B.I. Two Special Agents of the F.B.I. went to the American Airlines Freight building at Kennedy Airport, and after viewing several of the reels at a film laboratory concluded that the films were obscene. The Agents did not give Mr. Shipman any special instructions concerning the cartons, but instead asked him to handle the cartons as a routine matter and keep them advised. The shipment was forwarded on Thursday, September 28, 1967, and the six cartons arrived at Los Angeles International Airport on Friday, September 29, 1967.

While the foregoing events were occurring in New York City, on Wednesday morning, September 27, 1967, a "Herbert Ross" came to the American Airlines Freight Depot at Los Angeles International Airport and inquired about a shipment from New York. Mr. Jack Aldrich, Customer Agent for the Airlines, made a floor search for the six cartons, but was unable to locate the shipment. Mr. Aldrich then asked "Herbert Ross" for information concerning the shipment so that he could place a tracer for the six cartons. Incidentally, during the trial, Mr. Jack Aldrich identified the Defendant Rubin as the "Her-

bert Ross" who made this inquiry and gave him the information necessary for the tracer.

The notes made by Aldrich while conversing with "Ross" were passed on to Miss Alice Armour in the tracing section of American Airlines Air Freight. Late Wednesday, September 27, 1967, Miss Armour received a phone call from "H. Ross" inquiring about a shipment from New York and she told him that the cartons still had not been located. On Thursday, September 28, 1967, Miss Armour received three more phone calls concerning the New York shipment from a man with the same voice who identified himself as "H. Ross."

Miss Armour further testified that she tried to phone "Ross" on Thursday or Friday at the number given her by Aldrich, the American Airlines Customer Agent who initially took the information from "Ross" about the missing shipment of six cartons. The telephone number was for Paramount Wholesale Company, and she was advised by that firm that there was no "H. Ross" at that number. On Friday, September 29, 1967, "H. Ross" called Miss Armour again, and was informed by her that the shipment had arrived. Whereupon "Ross" said he would be down about noon to pick up the cartons.

Diligent investigation by the F.B.I. disclosed that all except one of these many calls by "Ross" to American Airlines in Los Angeles came from the home telephone of Defendant Rubin. The one exception was traced to Paramount Wholesale Company, and testimony at the trial demonstrated that Defendant Rubin did have an association with this Company, a young lady testifying that recently Defendant Rubin had given her a Paramount Wholesale Company business card which showed "H. Rubin" as the owner of the Company.

The final fact that ties Defendant Rubin to the shipment of the six cartons is that he was observed near the American Airlines Freight Depot at Los Angeles International Airport about noon on Friday, September 29, 1967, by a Special

Agent of the F.B.I. who had the six cartons under surveillance. Defendant approached the car in which the Special Agent was sitting and, apparently after seeing the radio and microphone that were attached to the dashboard of the Agent's car, hurriedly wheeled about, got into his car and abruptly left the airport parking lot. After Defendant fled, no one ever called again about the New York shipment or came to American Airlines to pick up the six cartons.

Having in mind all of the above facts, it is clear to this Court that all of the telephone calls made by "Ross" which have been recounted, namely the calls to the Comparatos in New York City and the calls to Miss Armour in Los Angeles, were made by the same person, Defendant Herbert Rubin masquerading as "Ross." Further, looking at all of the facts, this Court is convinced beyond any reasonable doubt that Defendant Herbert Rubin both *used* a common carrier to ship obscene films in interstate commerce and had the requisite *scienter* so as to be guilty of a violation of 18 U. S.C. § 1462.

## USE OF A COMMON CARRIER

■ "The question of what acts constitute 'use' of a common carrier for the purposes of section 1462 does not appear to have been answered in reported decisions." Gold v. United States, 378 F.2d 588, 594 (9th Cir., 1967). In *Gold*, the Ninth Circuit concluded that interstate commerce is "used" and an offense is committed under 18 U.S.C. § 1462 when

obscene matter is deposited with a common carrier for shipment. When determining whether a person has "used" a common carrier, this Court feels the real issue is not whether the defendant deposited or received the proscribed shipment, but whether the defendant exercised dominion and control over the shipment.

The Fifth Circuit in United States v. Rich, 407 F.2d 934 (5th Cir., 1969), cert. denied 395 U.S. 922, 89 S.Ct. 1775, 23 L.Ed.2d 239 (1969), affirmed a conviction on three counts of interstate transportation of obscene matter in violation of 18 U.S.C. §§ 1462 and 1465, and impliedly held that a person has "used" a common carrier within the meaning of 18 U.S.C. § 1462 even though he is not the shipper and has not received the material. In *Rich*, the defendant flew from Miami to New York City to "check on a shipment of obscene items that had failed to arrive", and then the day after the defendant returned to Miami, three cardboard cartons containing obscene books, pamphlets, pictures and films were observed at the Greyhound Bus Terminal in Miami. Even though the defendant apparently never received any of the shipment because these three cartons were seized by the F.B.I. at the premises of the Greyhound Bus Terminal, the Court still held that the defendant had "used" a common carrier.

In United States v. Miller, 379 F.2d 483 (7th Cir., 1967), the Seventh Circuit affirmed convictions for violations of 18 U.S.C. § 1952[3] by defendants who oper-

---

3.  18 United States Code § 1952
    § 1952. Interstate and foreign travel or transportation in aid of racketeering enterprises
    (a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—
        (1) distribute the proceeds of any unlawful activity; or
        (2) commit any crime of violence to further any unlawful activity; or
        (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment,

or carrying on, of any unlawful activity, and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.
    (b) As used in this section "unlawful activity" means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics, or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State

ated poolrooms in which baseball gambling pools were conducted. This Section makes it a violation if anyone "uses any facility in interstate or foreign commerce, including the mail, with intent to" commit certain proscribed acts. Although the poolroom customers and clerks used the Western Union ticker-tape to post the baseball scores on a blackboard, there was no evidence in *Miller* to demonstrate that the defendants themselves directly used the ticker-tape. When interpreting the meaning of "uses", the Seventh Circuit stated at 485:

"The applicability of the statute does not depend on whether a defendant personally operates the tickertape in conjunction with an illegal baseball pool. The key word of the statute is 'uses', one of the most comprehensive words in our language."

The Court continued with the following description of the defendant's activities:

"As proprietor and operator, respectively, of this business, the defendants were reponsible for the installation and presence of the ticker on their premises. They wanted the ticker in their establishment so that the customers could check the scores. They provided blackboards so that scores obtained from the ticker could be posted. They knew these scores would be of interest to their baseball pool customers. With defendant's knowledge and approval, their customers promoted the pool by posting the scores obtained from the tickertape. These activities constituted a 'use' of an interstate facility by defendants." 379 F.2d at 485.

■ The facts in the present case before us demonstrate beyond any doubt that Defendant Rubin was the intended receiver of the collect shipment of six cartons, that he had knowledge of all the facts contained in the air waybill, that he ordered Mrs. Comparato to disregard the depositor's instructions, and that he made numerous calls to American Airlines in Los Angeles in an effort to locate the cartons. When all of these facts are considered, it is obvious that he exercised dominion and control over the six cartons and consequently it is clear beyond any reasonable doubt that he "used" a common carrier within the meaning and intent of 18 U.S.C. § 1462.

## SCIENTER

Since Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959), it has been apparent that some *scienter* requirement is necessarily implied in every criminal obscenity statute. In *Smith,* the United States Supreme Court reversed a conviction of a proprietor of a bookstore who was convicted pursuant to a Los Angeles ordinance which made it unlawful for any person to have in his possession any obscene writing in any place where books are sold. The ordinance punished merely possession and did not require any knowledge of the contents of the books, but the Court held that the elimination of the *scienter* requirement might work a "substantial restriction on the freedom of speech and of the press." 361 U.S. at 150, 80 S.Ct. at 217. Yet the Court went on to add: "Eyewitness testimony of a bookseller's perusal of a book hardly need be a necessary element in proving his awareness of its contents. The circumstances may warrant the inference that he was aware of what a book contained, despite his denial." 361 U.S. at 154, 80 S.Ct. at 219.

■ Likewise, it can be conceded that in order to find him guilty, it is essential to find that Defendant Rubin had some knowledge of the contents of the films contained in the two cartons admitted into evidence. Therefore, and even though Section 1462 does not by its

in which committed or of the United States.

(c) Investigations of violations under this section involving liquor or narcotics

shall be conducted under the supervision of the Secretary of the Treasury.

express terms require any *scienter,* we nevertheless hold as the Supreme Court did in *Smith* that the *scienter* requirement must be read into this Federal statute as an implied requisite to conviction. United States v. Mishkin, 317 F. 2d 634 (2nd Cir., 1963), cert. denied, 375 U.S. 827, 84 S.Ct. 71, 11 L.Ed.2d 60 (1963); and United States v. Luros, 260 F.Supp. 697 (N.D.Iowa, 1966), rev'd on other grounds, 389 F.2d 200 (8th Cir., 1968).

In *Mishkin,* the defendant was convicted of conspiracy to import obscene matter into the United States, and the Second Circuit reasoned that *scienter* would be required for a conspiracy to commit the crime described in 18 U.S.C. § 1462, because *scienter* was required for a substantive violation of § 1462. Relying upon *Smith* that "Eyewitness testimony of a bookseller's perusal" is unnecessary, the Second Circuit found the required awareness of the obscene nature of the matter "From the clandestine manner in which the delivery to Mishkin was to be effected, and from Mishkin's apparent familiarity with the scheme * * *" 317 F.2d at 637.

Thus it appears that while the rule is clear that some knowledge of the contents of the films is required in the case before us for a successful prosecution under § 1462, the decisions do not precisely define the exact degree or amount of *scienter* constitutionally required. Mishkin v. New York, 383 U.S. 502, 510–511, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966); and Smith v. California, 361 U.S. 147, 154, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). What is certain, however, is that the Government must prove that the defendant knew the contents of the accused films. Yet the Government does not have the obligation of showing that the defendant knew such contents were in fact legally obscene. The leading case for this is Rosen v. United States, 161 U.S. 29, 16 S.Ct. 434, 40 L.Ed. 606 (1896), which involved a prosecution for mailing obscene material, the Court holding that once material is found to be obscene "and was deposited in the mail by one who knew or had notice at the time of its contents, the offence is complete, although the defendant himself did not regard the paper as one that the statute forbade to be carried in the mails. Congress did not intend that the question as to the character of the paper should depend upon the opinion or belief of the person who, with knowledge or notice of its contents, assumed the responsibility of putting it in the mails of the United States." 161 U.S. at 41, 16 S.Ct. at 438. This *Rosen* holding has been adopted in the following recent decisions: United States v. West Coast News Co., 357 F.2d 855, 862 (6th Cir. 1966), rev'd on other grounds, Aday v. United States, 388 U.S. 447, 87 S.Ct. 2095, 18 L.Ed.2d 1309 (1967); Kahm v. United States, 300 F.2d 78, 86 (5th Cir., 1962), cert. denied 369 U.S. 859, 82 S.Ct. 949, 8 L.Ed.2d 18 (1962); Schindler v. United States, 208 F.2d 289, 290 (9th Cir., 1953), cert. denied, 347 U.S. 938, 74 S.Ct. 633, 98 L.Ed. 1088 (1954); and United States v. Luros, 260 F.Supp. 697, 702 (N.D.Iowa, 1966), rev'd on other grounds, 389 F.2d 200 (8th Cir., 1968).

In Gold v. United States, 378 F.2d 588 (9th Cir., 1967), the Ninth Circuit further clarified the *scienter* requirement of 18 U.S.C. § 1462 when the Court affirmed the conspiracy conviction of Defendant Fusco who, the day after another defendant had deposited five cartons of obscene films with an airlines in Las Vegas, Nevada, came with a woman to the airlines freight office in Newark, New Jersey, and along with her gave the freight attendant the number of the air waybill together with the number of cartons and their approximate weight. The attendant informed Fusco and the woman that the packages had not arrived, whereupon they left the airport. The Court concluded:

"Obviously, Fusco and the woman had been advised by Gold of the shipment, the waybill number, and the number of the packages and their weight. It would stretch credulity beyond the breaking point to suppose that Fusco

expected to receive from the airline five packages of Mickey Mouse films, or films of comparable content. The jury concluded that he knew what was supposed to have been shipped and that he had conspired with Gold to receive a shipment of obscene films. We find no impropriety in the verdict and judgment against Fusco." 378 F.2d 595.

■■■ Here in the present case, knowledge of the contents of the films must be imputed to Defendant Rubin because he exercised dominion and control over the shipment and was the intended receiver. Dominion and control over the cartons before they left New York City is shown by Rubin's instructions to Mrs. Comparato to disregard the depositor's orders and send the packages collect to Los Angeles. Defendant Rubin was the intended receiver and he attempted to exercise further dominion and control over the cartons after they arrived in Los Angeles by his several phone calls and two personal visits to American Airlines Freight Depot. Moreover, the logical inference drawn from this actual attempted dominion and control, that Defendant Rubin knew the contents of the cartons, is reinforced by his precipitous flight from the parking lot after observing the F.B.I. agent and his failure, after observing the agent, to pick up the cartons despite his previously and strongly expressed concern and interest in the arrival of the cartons at American Airlines, Los Angeles.

The two decisions closest to the present case are the Second Circuit's United States v. Mishkin, *supra*, and the Ninth Circuit's Gold v. United States, *supra*. There was no evidence in either case that Defendant Mishkin or Defendant Fusco ever had actual possession of the obscene materials. True it is that Mishkin and Fusco were both acquitted of the substantive crime of 18 U.S.C. § 1462 and were convicted only for con-

spiracy to commit the offense. But as the Second Circuit explicitly stated in *Mishkin*, 317 F.2d at 637 and the Ninth Circuit implicitly held in *Gold*, 378 F.2d at 595, conspiracy to commit the substantive offense described in § 1462 requires the same *scienter* element as the actual substantive offense. Knowledge of the contents of the obscene books in *Mishkin* was attributed to the defendant because of the "clandestine manner" of the delivery, and his "apparent familiarity with the scheme." Knowledge of the contents of the films was similarly shown in *Gold* because Defendant Fusco had the air waybill number and gave a description of the packages to the airlines freight attendant. Surely Defendant Rubin's "collect shipment" instructions to the Comparatos, his continual and numerous calls from his own telephone in an effort to locate the cartons, and his flight from the airport parking lot after observing the F.B.I. agent, are sufficient to prove beyond any reasonable doubt that Rubin exercised dominion and control over the cartons and knew the contents of the films. It would "stretch credulity beyond the breaking point to suppose" any other conclusion.[4]

While the foregoing is not meant to constitute Special Findings, since they were knowingly and voluntarily waived by Defendant Rubin, this Court is compelled by the foregoing facts and law to find, and does so find, that Defendant Herbert Rubin has been proven guilty beyond any reasonable doubt of a violation of 18 U.S.C. § 1462 and is properly convicted thereof. Defendant Rubin shall report immediately to the Probation Officer for initiation and preparation of the customary formal Probation Report upon which the Court will hold a hearing and pronounce sentence, the date to be fixed by the Clerk of Court in the usual fashion.

So ordered.

---

4. See also, United States v. Orito, 424 F.2d 276 (9th Cir., April 20, 1970) where the Ninth Circuit in a per curiam opinion by Judges Browning, Duniway and

Wright found the necessary *knowledge* in the defendant's receipt of the materials and prior possession and shipment of similar obscene materials.