**UNITED STATES of America**

v.

**Ronald A. STEWART.**

Crim. No. 70–592.

United States District Court,
E. D. Pennsylvania.

Dec. 3, 1971.

U. S. Atty. Louis C. Bechtle, Asst. U. S. Atty. Thomas McBride, for plaintiff.

Alan Davis, Philadelphia, Pa., and H. Monte Levy, New York City, for defendant.

## OPINION AND ORDER

MASTERSON, District Judge.

Defendant is charged in a twelve count indictment with using the mails to send certain unsolicited "obscene, lewd, lascivious and filthy" commercial advertisements, in violation of 18 U.S.C. § 1461. Defendant has moved to dismiss the indictment on the ground that the materials referred to therein are not obscene, and that the application of the Postal Obscenity Law to the materials would be violative of the First Amendment to the United States Constitution. Counsel for the Government and the defendant have entered into a stipulation attaching two examples of the advertising brochures which are agreed to be representative of all the materials in this indictment. After carefully reviewing these materials, the authorities cited in defendant's briefs, and the prevailing law in the obscenity area, we have decided that the motion to dismiss must be granted.

## I. THE MATERIALS INVOLVED

The first brochure, relating to Counts I–IV, is entitled, "NOW FINALLY SEX EDUCATION WITHOUT CENSORSHIP!" The first page does not include pictures (except of the books advertised). The bold type tells the reader that this is "The First Authoritative Series of Uncensored Sex Instruction & Sex Information Books Ever Published In America." The text goes on to note that due to recent Federal Court decisions, "we can at last offer to you, as an adult over the age of 21 years, these valuable educational books: Sex and Censorship do not mix! You can't make love with all your clothes on and neither can a book offer complete instruction and information by omitting

or avoiding the proper photos or information! To do less would be to deny each individual the right to read, look, ponder, evaluate and reach his own conclusions on which path to follow to happiness. This is a right Americans have and are fighting and dying for! The right to read, learn and think is ours! Let those who wish to . . . exercise this right!!" The books are then described as "A MAJOR BREAK-THROUGH IN SEX EDUCATION."

The remainder of this brochure contains descriptive text and small black and white photographs from books which are offered for sale. All these books purport to be educational in nature: *Sex In Marriage, Decision in Denmark, Oral Sex & The Law, The Ways Homosexuals Make Love, Sex Pornography & The Law* and *Sex Freedom*. Since the Government contends that the advertisements themselves are obscene, we assume this allegation stems from the illustrative photographs which show adults in various positions of sexual intercourse and other sexual activities. The accompanying text is totally descriptive of what the offered book contains and could not be said to be offensive in itself.

The second brochure, relating to the last six counts, advertises a magazine entitled *Sexual Freedom*. It is different from the first only in that its photographs are in color, and pictures of a baby being born and various diagrams of sexual organs are included.

Since the indictment charges that the advertisements, in addition to being obscene in themselves, give information as to where obscene materials may be obtained, we have asked to examine the underlying publications which are offered for sale. The Government has supplied us with Volume Two of *Sex In Marriage*, agreed to be representative of the books offered for sale in the first brochure, and *Sexual Freedom*, the magazine offered in the second. *Sex in Marriage* written by Wendell M. Koble, M. D., is a paperbound book. Its 179 pages are mostly textual, with black and white

and color photographs of a man and a woman in various positions of sexual intercourse, numbered and carefully tied in with the text. The book is complete with anatomical diagrams, a glossary, a bibliography and an index.

*Sexual Freedom* is a book based on the motion picture "Sexual Freedom In Denmark." Accompanying its graphic photographs of sexual activity are biblical passages, a "Credo," a legal discussion of obscenity, a segment of ancient Japanese drawings, and discussions of sex education, overpopulation, birth control, venereal disease, frigidity and the future of sex, all with *photographic illustrations.*

It has also been stipulated that each advertising brochure was contained in a sealed inner mailing envelope which bore the following warning notice on each side:

"NOTICE—READ BEFORE OPENING

This envelope contains unsolicited sexually oriented, illustrated literature and brochures. The enclosed brochures may photographically or pictorially illustrate pictures of nude women and/or nude men together or separately in erotic situations, sexual embrace or intercourse and may include pertinent text.

IF YOU ARE NOT OVER THE AGE 21 AND/OR NOT INTERESTED IN SEEING OUR BROCHURES AND PURCHASING THIS MATERIAL, THEN:

"PLEASE DISPOSE OF THIS ENVELOPE WITHOUT OPENING!!

It is not our intention to disturb, annoy or offend any person not interested in our literature. If you wish your name removed from our mailing list, please return to us the coded mailing label that bears your name and address. If you receive another mailing from us; after requesting the removal of your name, this would be only because your name appears on a list we rented from another firm and we were unable to delete your name from this list."

## II. DISCUSSION

We need not decide whether defendant is correct that these advertisements can be held to be obscene *per se* only if the books themselves are held to be obscene. We hold as a matter of law that neither the advertisements nor the books which have been stipulated to as being representative of the materials referred to in the indictment are obscene and are, therefore, protected by the First Amendment.

Although this inquiry must be inherently subjective to some extent, we are guided by several tests formulated by the Supreme Court. "Sex and obscenity are not synonymous. Obscene material is material which deals with sex in a manner appealing to prurient interest." Roth v. United States, 354 U.S. 476, 487, 77 S.Ct. 1304, 1310, 1 L.Ed.2d 1498 (1957). This elusive definition is explained by the Court in a footnote as that which appeals to "a shameful or morbid interest in nudity, sex, or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters. . . ." In subsequent cases two other elements were specified: "the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters," and "the material is utterly without redeeming social value." A Book Named John Cleland's Memoirs v. Massachusetts, 383 U.S. 413, 418, 86 S.Ct. 975, 977, 16 L.Ed.2d 1 (1966).

It is absolutely clear that this trilogy of factors is not present here. We do not think it would be possible to find that these materials appeal to, or were calculated to appeal to, a "morbid" or "shameful" interest in nudity or sex. As the Court of Appeals for the Second Circuit recently stated in holding the film "Language of Love" not to be obscene:

"The erotic instinct and the apparent desire for sex education are in the ascendency in our society, and in the

sensitive area of constitutional adjudication of individual rights we must be careful to distinguish between the arousal of sexual instincts and the perversion of those instincts to morbidity." United States v. 35 MM. Motion Picture Film, 432 F.2d 705 (1970). As that court wisely pointed out, a great deal of our contemporary advertising appears to be an appeal to arousal of the consumers' sexual interest. The advertising which forms the basis of this prosecution, while totally explicit in its graphic portrayal of interpersonal relations which we consider to be peculiarly private, cannot be considered perverse when the entire context of the photographs is taken into consideration. While we do not hold that all materials which purport to be educational cannot actually be found to be calculated to appeal to the prurient interest, we hold these materials not to have such an appeal.

If sex education materials are constitutionally protected because they have a redeeming social value, it is clear that pictures may be used to illustrate the text. As the Second Circuit recognized in the "Language of Love" case:

"Regardless of the caliber of the editing, which in many places is rather crude, it cannot be said that the scenes of graphic, explicit physical activity were simply injected into the film with no relation to the theme, for the sociological, medical and physiological discussions which comprise over three-quarters of this film are about precisely what takes place sexually between the partners." 432 F.2d at 712. The dominant theme of these books and the advertisements for them is the revelation and solution of sexual problems. In short, it is "material dealing with sex in a manner that advocates ideas," and the First Amendment protects the expression of ideas regardless of medium or subject. Jacobellis v. Ohio, 378 U.S. 184, 191, 84 S.Ct. 1676, 1680, 12 L.Ed.2d 793 (1964). Even if we thought that this material appealed to the prurient interest, its constitutional status may not be made to turn on a "weighing" of its social importance against its prurient appeal, for a work cannot be proscribed unless it is "utterly" without social importance. Jacobellis, supra.

■ Finally, there has been no showing that these materials affront contemporary community standards. The Government has presented us with no case in which material of this nature has been found to be obscene in the recent past. On the other hand, several decisions are indicative of changing community standards which have substantially broadened the scope of constitutional protection. See e. g., Pinkus v. Pitchess, 429 F.2d 416 (9th Cir. 1970). While we are not prepared to say that the publication of photographs such as these is constitutionally protected per se at this time, it is clear that their publication in an educational context is not offensive by contemporary community standards and is, therefore, protected by the First Amendment.

■ Finally, the Government has argued that even though the materials might not be viewed as obscene in the abstract, the mode of distribution and the form of the solicitation amounted to pandering, "the business of purveying textual or graphic matter openly advertised to appeal to the erotic interest of their customers", Ginzburg v. United States, 383 U.S. 463, 474–476, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966). We do not feel that these materials can be said to be permeated with "the leer of the sensualist" as the Court described Ginzburg's publication. Nor do we think that defendant's advertising can be said to be a "deliberate representation of [his] publications as erotically arousing," so as to "stimulate[d] the reader to accept them as prurient; he looks for titillation, not for saving intellectual content." 383 U. S. at 470, 86 S.Ct. at 947. Ginzburg's advertisements "did not . . . focus their claims on [the books'] supposed therapeutic or educational value; rather, they deliberately emphasized the sexually provocative aspects of the work, in order to catch the salaciously disposed.

They proclaimed its obscenity. . . ." 383 U.S. at 472, 86 S.Ct. at 948. As we have already said, the entire thrust of the advertisements in question here was that the publications were designed to promote the legitimate purpose of sexual education. We hold that as a matter of law, it cannot be found that these publications were "created or exploited on the basis of its appeal to prurient interests," and, therefore, *Ginzburg* does not apply to this case. 383 U.S. at 474, 86 S.Ct. at 949.

We recognize that the unsolicited nature of defendant's solicitations gives rise to the possibility that those who receive them will be greatly offended. In *Ginzburg*, the court relies on Judge Learned Hand's description of the distributor's activities in United States v. Rebhuhn, 109 F.2d 512 (2nd Cir., 1940):

"The defendants had indiscriminately flooded the mails with advertisements, plainly designed merely to catch the prurient, though under the guise of distributing works of scientific or literary merit. We do not mean that the distributor of such works is charged with a duty to insure that they shall reach only proper hands, nor need we say what care he must use, for these defendants exceeded any possible limit." 383 U.S. at 473, 86 S.Ct. at 949.

To the contrary, defendants here have taken great precaution to protect those who might be offended by the advertisements, as the above quoted language from the inner-sealed envelopes will show. The envelopes were designed to prevent "an assault upon individual privacy by publication in a manner so obtrusive as to make it impossible for an unwilling individual to avoid exposure to it." Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967).[1] We think it is clear that the envelope warnings do not add a pandering element, but to the contrary, eliminate the "brazen" and "indiscriminate" character of the adver-

tising which was condemned in *Ginzburg*.

For the aforementioned reasons, defendant's Motion to Dismiss will be granted.

---

[1]. It is interesting to note that defendant's precautions fulfilled a Congressional purpose prior to the requirements of recent legislation. See 18 U.S.C. §§ 1735–1737.