**UNITED STATES of America**

v.

**Herbert L. GUNDLACH, d/b/a Superb Sales and H. & G. Enterprises, d/b/a Adult World Products Co.**

**Crim. No. 14808.**

United States District Court, M. D. Pennsylvania.

July 10, 1972.

James S. Walker, U. S. Atty., Scranton, Pa., Donald B. Nicholson, U. S. Dept. of Justice, Washington, D. C., for the United States.

Robert Eugene Smith, Towson, Md., D. Freeman Hutton, Atlanta, Ga., J. Thomas Menaker, Harrisburg, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

HERMAN, District Judge.

Defendant was originally charged with thirty-two counts of violating 18 U.S.C. § 1461.[1] Upon motion of defendant, twenty-seven of the counts were dismissed by this court for reasons set down in United States v. Gundlach, 345 F.Supp. 701 (M.D.Pa.1972). Of the remaining seven counts, the government dismissed three. The four counts left are the subject of this ruling. The defendant waived a jury trial on the four counts. Both sides signed a written stipulation[2] and submitted proposed

1. 18 U.S.C. § 1461 says, in pertinent part:
"Every obscene, lewd, lascivious, indecent, filthy or vile article, matter, thing, device, or substance; and
 *     *     *     *     *
"Every written or printed card, letter, circular, book, pamphlet, advertisement, or notice of any kind giving information, directly, or indirectly, where, or how, or from whom, or by what means any of such mentioned matters, articles, or things may be obtained or made, or where or by whom any act or operation of any kind for the procuring or producing of abortion will be done or performed, or how or by what means conception may be prevented or abortion produced whether sealed or unsealed,
 *     *     *     *     *
"Is declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier.
"Whoever knowingly uses the mails for the mailing, carriage in the mails, or delivery of anything declared by this section to be nonmailable, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, or knowingly takes any such thing from the mails for the purpose of circulating or disposing thereof, or of aiding in the circulation or disposition thereof, shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense, and shall be fined not more than $10,000 or imprisoned not more than ten years, or both, for each such offense thereafter."

2. The parties stipulated and agreed as follows:
"1. Defendant waives trial by jury.
"2. The parties hereby agree to the dismissal of Counts 17 and 20 and 32.
"3. Defendant admits that he knowingly and wilfully used the mails for the mailing and carriage in the mail and knowingly and wilfully caused to be delivered by mail, according to the directions thereon, the envelopes, packages and other material set forth in Counts 18, 19, 21 and 22; that he was aware that the general nature of the materials set forth in Counts 18, 19, 21 and 22 was that they were sexually oriented; that the material in Count 19 consisted of a deck of playing cards; that the material contained in Count 21 consisted of a book entitled, 'Animals As Sex Partners;' and that the materials contained in Counts 18 and 22 consisted of advertisements describing the materials contained in Counts 19 and 21.
"4. The materials referred to in Counts 18, 19, 21 and 22 were all received pursuant to the mailing directions therein.
"5. The materials referred to in Counts 18 and 22 were unsolicited. The materials set forth in Counts 19 and 21 were ordered by Postal Inspectors in the course of investigating this case using the pseudonym 'B. Hunter.'

findings of fact and law upon which this court could base its ruling.

The defendant bases his motion for acquittal on four grounds: (1) the government failed to meet its burden of proof by not calling expert witnesses; (2) the failure to allege pandering in the indictment is a fatal variance barring pandering as an issue; (3) the material is not obscene as a matter of law, and (4) the defendant did not have the requisite scienter.

## FACTS

The gravamen of 18 U.S.C. § 1461 is the use of the federal mails to send obscene, lewd, or lascivious materials, or to send information regarding ways to obtain such materials. The four counts in question involve one deck of playing cards, one book and two advertisements (one advertising each item). Count XIX alleges the wrongful mailing of the playing cards. The box is illustrated by four partial photographs of a man and woman engaged in sexual intercourse. The front face of the container reads, "Sexual Love, 55 illustrations in vivid color." Inside, one of the cards describes the photos as a "manual." Each card is an explicit color photograph of a position of sexual intercourse, the back being descriptive of what is occurring in the photo. The cards themselves double as ordinary playing cards. The bizarre juxtaposition of playing cards and a "sex manual" is unexplained anywhere on the product. There is a preface (also on a card signed by one Charles Rosenbloom, M.D., praising the "book" as "concise and helpful").

Count XVIII is an advertisement for the cards. The relevant portions of the ad shows numerous sample photos with the following text:

"Real, authentic playing cards—except this deck is *really* stacked! 54 swinging couples show you everything they've got—in glossy full color. Nothing is hidden. Get these cards—and you'll find your buddies lining up to play with you. Only problem is, how will you keep your mind on the game?" (Emphasis in original)

Count XXI is a book entitled, "Animals As Sex Partners." The illustrated book claims to be a series of "Case Histories" of bestiality amongst women. The text is written in the first person and details sexual encounters between young girls and countless animals.

Count XXII is an advertisement for the book. The ad is also illustrated and contains the following language beneath the headline, "SEX SLAMMERS":

"This is the first coming of the new hard-crusted super line of documentary books that are boldly unique! Each is an erotic shocker making others tame and childish by comparison! This is close-up, detailed writing that tells and S–H–O–W–S with words and pictures, the sex action like it really is! Not for the weak, these are graphic books for unflinching readers!"

\* \* \* \* \* \*

"Kinsey revealed FOUR MILLION AMERICAN FEMALES will at one time or another in their lifetime make sexual love with an animal. This is the incredible documented book that tells you and *shows* you *how* they do it and *why*! Fully revealed is the unbridled, blistering sexual urges that drive these females to bestiality. The illustrations are as stunning as the case histories are shocking." (Emphasis in original)

The parties have stipulated that the ads in Counts XVIII and XXII were unsolicited and that based on the ads a postal inspector ordered the material in Counts XIX and XXI. However, the

"6. Prior to the dates on the mailings set forth in this Indictment, the names 'B. Hunter' and 'Mike Lapham' had been used by Postal Inspectors to order sexually oriented material, in the course of investigation of violations of 18 U.S.C. 1461.

"7. During the period covered by the Counts of this Indictment, HERBERT L. GUNDLACH traded as and did business as Superb Sales and H & G Enterprises and did business as Adult World Products Co."

volume of advertising by the defendant is not at issue. Likewise, it appears from the physical evidence that the ads were sent in a single white envelope with no warning as to the nature of the contents.[3]

### I. EXPERT WITNESSES AND OBSCENITY

■ Defendant has contended in oral argument and supporting memoranda that the government failed to meet its evidentiary burden. The only evidence before this court is the allegedly obscene material, the testimony of the postal inspector and books presented by the defense for comparison of another case. United States v. Stewart, 336 F.Supp. 299 (E.D.Pa.1971), discussed *infra*. The postal inspector's testimony consisted simply of identifying the physical evidence and explaining his use of pseudonyms to obtain potentially unmailable material.

In order to bolster his argument, defendant submitted a detailed examination of 16 cases regarding the government's affirmative evidentiary burden. The cases are persuasive only upon cursory examination. Each and every one involves an alleged obscenity violation where the article's obscenity was in question without any issue of pandering as raised in Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966). Each case involved violations based on the so-called "prurient interest" or "community standards" tests. One of the defendant's own cases points up the crucial nature of the distinction. In re Seven Magazines, 268 A.2d 707 (1970), the Rhode Island Supreme Court dismissed convictions based on a "community standards" test, absent any expert witness. The court concluded that the government had a greater duty than to merely proffer the allegedly obscene matter. The court noted, however:

"In conclusion we observe that the constitutional issue would be different

if in these cases there were evidence —and we re-emphasize that there was none here—of pandering as in Ginzburg v. United States . . . or of an assault upon individual privacy in a manner so obtrusive as to make it impossible to avoid exposure." (Citations omitted)

The above conclusion of the Rhode Island Supreme Court underscores the inherent deficiency of defendant's entire line of cases on this matter.

Defendant relies chiefly on United States v. Klaw, 350 F.2d 155 (2d Cir. 1965) for the proposition that expert testimony is needed in an obscenity prosecution. In Klaw, unlike the present case, pandering was apparently not an issue despite the fact that ads and materials were involved in an alleged violation of 18 U.S.C. § 1461. The Second Circuit rules that expert testimony was needed to aid a jury in determining the definitions of "prurient interest" and "community standards."

However, in United States v. Wild, 422 F.2d 34 (2d Cir. 1969), cert. denied, 402 U.S. 986, 91 S.Ct. 1644, 29 L.Ed.2d 152 (1971), reh. denied, 403 U.S. 940, 91 S.Ct. 2242, 29 L.Ed.2d 720 (1971) the Second Circuit indicated that experts are not a universal requirement. In Wild the defendants were also charged with violations of 18 U.S.C. § 1461. The materials involved were illustrated, homosexually oriented publications. The defendants were convicted by a jury, absent any expert testimony. The jury had both the ads and the material advertised. The circuit concluded:

"We do not believe . . . that the Constitution requires the Government to produce expert testimony about appeal to the prurient interest and contemporary community standards in every obscenity case. . . ." (422 F.2d, at 35)

The evidence in Wild depicted a sexual act and male genitalia. "In this context,

---

3. The court has, within the text of the finding of facts, accepted virtually all of the defendant's proposed findings of fact; suggested findings # 1 through # 4. The court rejected # 5 as wholly irrelevant.

Suggested findings # 6 through # 9 were incorporated in substance, as were # 11 and # 12. Suggested finding # 10 was rejected as irrelevant.

the issues of prurient appeal and offensiveness to contemporary community standards can be dealt with by a jury without expert help. . . . Simply stated, hard core pornography such as this can and does speak for itself" (at 36).[4] *See also* Kahm v. United States, 300 F.2d 78 (5th Cir. 1962).

This court aligns itself with United States v. Brown, 328 F.Supp. 196 (E.D. Va.1971). In Brown the court interpreted Klaw in light of Wild in a fashion contra to the instant defendant. As the Supreme Court recalled in Ginzburg, the cases involving the "obscenity questions since Roth, it [the Supreme Court] has regarded the materials as sufficient in themselves for the determination of the question" (383 U.S., at 465, 86 S.Ct. at 944). This court does not regard Ginzburg as destructive of Roth. On the contrary, Roth has expressly told us that "obscenity is not within the area of constitutionally protected free speech or press" (354 U.S. 476, at 485, 77 S.Ct. 1304 at 1309).

Based upon Wild and Brown it is clear that expert testimony is not required per se to sustain an obscenity conviction. Just as this court was able to dismiss 27 counts against defendant Gundlach, absent the aid of experts, so too can it sustain a conviction without them. Were this a case involving only matters of "community standards," etc., experts might well be required. In many such cases advertising is not an issue before the court. Here, as in Ginzburg, the court is faced with the defendant's own estimation of the items he sells. Nowhere in his circulars does he even hint at redeeming social value or the merit of his products. Instead, his ads bluntly reveal *only* the crudest and most explicit sexual aspects of the book on bestiality and the playing cards.

## II. FAILURE TO ALLEGE PANDERING

The defendant argues that pandering is a crucial element of obscenity and as such should be alleged in the indictment.

The Supreme Court impliedly found against the defendant by its ruling in Ginzburg. The defendant Ginzburg was convicted under 18 U.S.C. § 1461 for selling a book through the mails. The defendant was indicted by a grand jury, but without being formally charged with pandering or improper advertising. The court affirmed the convictions and the pandering concept and therefore, by implication, approved obscenity indictments which do not reveal the government's theory of the case.[5]

The defense stresses the applicability of United States v. Pinkus, 333 F.Supp. 928, 929 (C.D.Cal.1971). In that case, involving violations of 18 U.S.C. § 1461, the court dismissed the indictment for failure to allege pandering. The court cited no authority, nor does the ruling reveal any of the court's reasoning in reaching such a conclusion. A search has revealed no cases which follow Pinkus, nor any upon which it might be grounded.

This court finds the case of Gordon v. Christenson, 317 F.Supp. 146 (D.Utah C.D.1970) more persuasive. The court concluded that an obscenity statute need not "expressly incorporate all Supreme Court decisions defining obscenity in order to be valid" (at 148). The court determined that the indictment need only give adequate warning and notice to the defendant. This court finds the Gordon ruling to be more closely aligned with Ginzburg than the aberrant Pinkus case.

The issue of pandering is therefore still before this court for consideration.

---

4. The expression "hard core" has found wide use, especially since Jacobelis v. Ohio, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964) wherein Mr. Justice Stewart declared in his concurring opinion, "I know it when I see it."

5. An examination by this court of the original Ginzburg indictment, proferred by the prosecution, reveals no mention of pandering.

## III. OBSCENITY OF THE MATERIAL IN QUESTION

■ The defendant further argues that even if pandering is considered by this court, the instant case does not present sufficient evidence of Ginzburg type pandering to justify conviction. The issue is crucial to the defendant. Although ads can be the basis for a conviction,[6] they must either be obscene themselves *or* advertise something which is.

Ginzburg holds that the context (method of advertising) of the publication is relevant to determine its obscenity. Mr. Justice Brennan's majority opinion declared that "[t]he question of obscenity may include consideration of the setting in which the publications were presented as an aid to determining the question of obscenity" (383 U.S., at 465–466, 86 S.Ct., at 944). The Court also concluded:

> "[W]e view the publications against a background of commercial exploitation of erotica solely for the sake of their prurient appeal . . . ." (at 466, 86 S.Ct. at 945)
>
> \* \* \* \* \* \*
>
> "Where the purveyor's sole emphasis is on the sexually provocative aspects of his publications, that fact may be *decisive* in the determination of obscenity" (at 470, 86 S.Ct. at 947). (Emphasis supplied)

The defendant urges upon this court the reasoning in United States v. Stewart, 336 F.Supp. 299 (E.D.Pa.1971), Criminal No. 70–592. In that case Judge Masterson dismissed a 12-count indictment charging violations of 18 U., S.C. § 1461. Each count involved only advertisements for books and not the books themselves. A conviction for violating 18 U.S.C. § 1461 can be sustained if the ads are obscene or the material advertised for sale is obscene (*see* n.1).

This court sees major distinctions between Stewart and the instant case.

First, the defendant in Stewart sent the advertising unsolicited (as did defendant in the instant case, *see* n.2) but in double envelopes. Inside each mailing envelope was a second sealed envelope with the following warning:

> "NOTICE—READ BEFORE OPENING This envelope contains unsolicited sexually oriented illustrated literature and brochures. The enclosed brochures may photographically or pictorially illustrate pictures of nude women and/or nude men together or separately in erotic situations, sexual embrace or intercourse and may include pertinent text.
>
> "IF YOU ARE NOT OVER THE AGE OF 21 AND/OR NOT INTERESTED IN SEEING OUR BROCHURES AND PURCHASING THIS MATERIAL, THEN:
>
> "PLEASE DISPOSE OF THIS ENVELOPE WITHOUT OPENING!!
>
> "It is not our intention to disturb, annoy, or offend any person not interested in our literature. If you wish your name removed from our mailing list, please return to us the coded mailing label that bears your name and address. If you receive another mailing from us, after requesting the removal of your name, this would be only because your name appears on the list we rented from another firm and we were unable to delete your name from this list."

Contrasted with the above procedure, the ads in the instant case arrived in single envelopes without any warning of the contents, except for the word "personal" on one. In neither Stewart nor this case did evidence of the volume of advertising play any part.

Secondly, the advertising text in the two cases is markedly different. Al-

---

6. Ginzburg v. United States, 383 U.S. 463, 465, 86 S.Ct. 942, 944, 16 L.Ed.2d 31 (1966): "The Government stipulated at trial that the circulars advertising the publications were not themselves obscene; therefore the convictions on the counts for mailing the advertising stand only if the mailing of the publications offended the statute."

though both included explicit photos of the advertised materials, in Stewart the ads centered on the purportedly educational nature of the products. The difference in tone of the instant advertising is quite noticeable as quoted *supra.*

Third, the Stewart case involved absolutely nothing comparable to the illustrated book on bestiality, "Animals As Sex Partners," found in Count XXI. Counts XXI and XXII are completely beyond comparison to the material in Judge Masterson's ruling. Each of the books in Stewart purports to be educational in nature: "Sex In Marriage"; "Decision In Denmark"; "Sex, Pornography & The Law"; "Sex Freedom"; "Oral Sex & The Law."

In United States v. Gower, 316 F. Supp. 1390, 1395 (D.D.C.1970), the court was faced with a similar situation. The defense proferred some of the very books dealt with in Judge Masterson's ruling in Stewart. The court, in Gower, found the books arguably of redeeming social value, as does the Stewart court. Contrasted with the physician-written texts in Stewart, the "hard core" pornography in Gower paled. Likewise, the Gower ruling also rejected a defense argument that expert testimony was required. The court rejected that argument, saying the material spoke for itself. In Gower the matter in question was homosexually oriented and certainly no more "hard core" than the bestiality in Count XXI.

This court has examined both the ads and books in Stewart. In each volume, the text makes up most of the books. Although the illustrations could not be more explicit, they are, nevertheless, keyed into a text written by physicians and psychologists. Each book purports to educate the reader on various aspects of sex in marriage, the law of pornography, etc. It is apparent that Judge Masterson could not, given the appearance of education intent, rule the material obscene. This court, however, is not faced with material which even remotely approaches the stature of the books in Stewart.

There could be no sharper contrast than between "Sex, Pornography & The Law" on the one hand, and "Animals As Sex Partners" on the other. This court, therefore, rejects defense efforts to prove Stewart to be a parallel and influencing decision.

As further support for his argument, defendant cites Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967). Redrup's conviction was reversed by the Court which said the pandering was not the "sort of pandering found significant" in Ginzburg. Defendant's interpretation of Ginzburg, in light of Redrup is altogether too constrictive. He argues that each and every factual characteristic of the Ginzburg type pandering must be present. To the defendant, they include: (1) massive indiscriminate mailings; (2) selection of suggestive post office address[7]; (3) flaunting of court rulings relaxing obscenity restrictions, and, of course (4) a sexually provocative slant to the ads.

To require every one of the above elements to be present before pandering exists would totally emasculate the Ginzburg ruling. Nevertheless, the defendant argues that Redrup is proof positive that the Supreme Court is strictly defining Ginzburg. Any fair reading of Redrup compels a rejection of the defense argument. The defendant in that case was arrested under color of a state law for selling allegedly obscene books at a newsstand. The books were sold over the counter by the defendant upon request. No evidence existed as to advertising. More conclusive, the case did not turn on pandering at all, but on totally distinct definitions of obscenity.

In short, defendant's reading of the Redrup case is unpersuasive. Instead, this court finds the words of Mr. Justice Brennan to be most illuminating. As

---

7. Ginzburg attempted to mail from Intercourse and Blue Ball, Pennsylvania, and finally settled on Middlesex, New Jersey.

noted *supra,* the crucial question is whether the "purveyor's sole emphasis is on the sexually provocative aspects of his publications" (383 U.S., at 470, 86 S.Ct., at 947).

Defendant cites no less than half a dozen more cases as illustrative of Redrup. In each case numerous distinguishable differences are present to render them unpersuasive.[8]

This court, therefore, rejects defendant Gundlach's contention that Redrup is controlling. Neither Stewart nor Redrup (and its sequence of cases) is applicable enough to compel acquittal verdicts.

■ The issue, therefore, comes down to whether the facts in the instant case satisfy the concept of pandering as discussed *supra* by Mr. Justice Brennan. *Nowhere* in the advertisements in question is there any mention of the potential value of the materials being sold. Nowhere does either circular mention anything but the crudest, most salacious aspects of the publications. The portions of the ads quoted herein are not the worst examples from the circulars, but merely representative of their entire tone. Clearly, the "leer of the sensualist" is everywhere present in the instant case.

The defendant's advertising contained sufficient elements to find pandering. The ads were sent unsolicited, they contained no warning of the contents, they contained sexually provocative text and explicit photos and the products themselves emphasized each of the points promised in the ads. Although the defendant made no allegation of social worth, the matter warrants some discussion, especially as it relates to Count XIX; the playing cards.

Given the context of the cards and their method of packaging, this court finds it inherently incredible that playing cards could ever seriously be used as a sex manual. Nevertheless, even granting some social value to the "literature" accompanying the cards, this court may still find the cards and the ad to be violative of 18 U.S.C. § 1461.

■ As the Supreme Court noted in A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Massachusetts, 383 U.S. 413, 420, 86 S.Ct. 975, 978, 16 L.Ed.2d 1 (1966), a book with a "minimum of social value" may still be declared obscene. If the playing cards have any social value it must certainly be minimal. As stated in Memoirs:

> "[T]he circumstances of production, sale, and publicity are relevant in de-

8. This court finds each of the following cases cited by defendant to be distinguishable: Books, Inc. v. United States, 358 F.2d 935 (1st Cir. 1966), rev'd per curiam, 388 U.S. 449, 87 S.Ct. 2098, 18 L.Ed.2d 1311 (1967). In Books the only pandering was based on the sexually provocative book jackets and absolutely no separate advertising was alleged. Childs v. Oregon, 431 F.2d 272 (9th Cir. 1970), rev'd per curiam 401 U.S. 1006, 91 S.Ct. 1248, 28 L.Ed.2d 542 (1971). In Childs there was no evidence of advertising, and the pandering was based solely on the salacious jacket of the books. Poulos v. Rucker, 288 F. Supp. 305 (M.D.Ala.1968). In Poulos the case involved a declaratory judgment that the books in question were not obscene. The ruling involved a single newsstand and no allegations of advertising. In point of fact, the court expressly said the ruling would have been different had any pandering been present. The Poulos

court interpreted the per curiam reversals based on Redrup as evidence that "it is indeed a rare book that, solely on the basis of its content, is not entitled to constitutional protection" (at 307). Hayse v. Van Hoomissen, 321 F.Supp. 642 (D.Or.1970), vacated on other grounds 403 U.S. 927, 91 S.Ct. 2248, 29 L.Ed.2d 705 (1971). The Hayse ruling granted civil injunctive relief to plaintiffs. The three-judge court found a state statute to be overbroad in proscribing the distribution of obscenity. Nowhere in the ruling is pandering an issue as is set down in the instant case. Grant v. United States, 380 F.2d 748 (9th Cir. 1967). The circuit reversed an apparently unreported district court conviction for violating 18 U.S.C. § 1461. The ruling has no value since the fact situation is unreported. The circuit merely concluded, without explanation, that the "leer" required in Ginzburg was missing.

termining whether or not the publication or distribution of the book is constitutionally protected. Evidence that the book was commercially exploited for the sake of prurient appeal, to the exclusion of all other values, might justify the conclusion that the book was utterly without redeeming social importance. It is not that in such a setting the social value test is relaxed so as to dispense with the requirement that a book be *utterly* devoid of social value, but rather that, as we elaborate in Ginzburg v. United States . . . where the purveyor's sole emphasis is on the sexually provocative aspects of his publications, a court could accept his evaluation at its face value." (Emphasis in original)

Given the above from Memoirs and the Ginzburg ruling which did not conclude the material itself to be wholly without merit,[9] it is clear that the token attempt to make the tawdry cards into a "manual" is of no avail.

"Thus, a publication having literary value or social importance may be obscene under federal constitutional standards where the purveyor's sole emphasis was on sexually provocative aspects of the publication and the publication was made available to the public at large without limitation." 50 Am.Jur.2d § 5, at 458 (1970)

In short, merely giving an intellectual gloss to literary trash cannot automatically render the courts powerless to act.

### IV. SCIENTER

Defendant's scienter argument has no merit whatsoever. As early as 1896 the Supreme Court noted:

"Every one who uses the mails of the United States for carrying papers or publications must take notice of what, in this enlightened age, is meant by decency, purity, and chastity in social life, and what must be deemed obscene, lewd, and lascivious." Rosen v. United States, 161 U.S. 29, 42, 16 S. Ct. 434, 480, 40 L.Ed. 606 quoted with approval in Roth, *supra,* 354 U.S. at 491, n. 28, 77 S.Ct. at 1312.

■ The defendant takes comfort in the case of Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). There the Court reversed a conviction for selling obscene literature where the government failed to prove that the defendant knew of the contents of the book. Smith has not been interpreted to require that the defendant know the material to be obscene, but merely know what the material contains, leaving legal rulings to the courts. United States v. Rubin, 312 F.Supp. 950, 955 (C.D.Cal. 1970); United States v. West Coast News Co., 357 F.2d 855, 862 (6th Cir. 1966), rev'd on other grounds, 388 U.S. 447, 87 S.Ct. 2095, 18 L.Ed.2d 1309 (1967).

Especially in light of the stipulations set down in n.2, the defendant has absolutely no basis upon which to attack the scienter required for conviction. As the court in Rubin declared:

"[T]he Government must prove that the defendant knew the contents of the accused films. Yet the Government does not have the obligation of showing that the defendant knew such contents were in fact legally obscene. . . ." (312 F.Supp., at 956)

Clearly, defendant Gundlach possessed sufficient scienter upon which to support a conviction.

■ For the reasons herein stated, this court finds the defendant, Herbert L. Gundlach, guilty as charged beyond a reasonable doubt on Counts XVIII, XIX, XXI and XXII, in violation of 18 U.S.C. § 1461.

9. In numerous places the Court in Ginzburg indicated that the material in question may well have had social merit. See n. 5, 383 U.S. at 466, 86 S.Ct. 942. The Court also noted that "by animating sensual detail to give the publication a salacious cast, petitioners reinforced what is conceded by the Government to be an otherwise debatable conclusion" (383 U.S., at 471, 86 S.Ct. at 948).